## McCosker *vs.* Golden.

*In the matter of the estate of* Ellen Golden, *deceased.*

The right of a husband to administer upon the estate of his deceased wife, is a positive right, not dependent upon his interest in the estate. Whether it was an original Common Law right—*Quære.*

His right to administer did not originate from his right to the estate, but on the other hand, he became entitled to the estate because he had a right to administer; the statute of distributions never having deprived him of the interest in the residue of the estate, which before the passage of that act was enjoyed by all administrators, after paying the debts and deducting the *partes rationabiles.*

The R. S., have also expressly declared that the assets of the deceased wife, after the payment of debts, shall pass to the husband, or his personal representatives, even where some other person administers.

The acts of 1848 and 1849, for the more effectual protection of the property of married women, made no alteration in the statute of distributions. They only authorized a married woman to *take, hold, convey or devise* her property, but made no change as to its disposition in case she died intestate.

The next of kin of a married woman dying intestate, have neither acquired a right to administer under the Acts of 1848 and 1849, nor any interest in the surplus of her estate after the payment of debts.

C. F. Grim, *for the husband,* Edward Golden.
Francis Byrnes, *for next of kin.*

The Surrogate. The deceased died June 19, 1849, intestate, leaving her husband surviving. Her sister, as one of the next of kin, now applies for letters of administration, on the ground that the Acts of 1848 and 1849, " for the more effectual protection of the property of married women," authorizing married women to take, hold, convey and devise, real and personal property, in the same manner and with like effect, as if unmarried, have divested the husband of any interest in the estate of his wife after marriage, and also deprived him of the right to administer thereon.

1. As to the right to administer. It is assumed by the counsel for the applicant, that the reason of 'the statute, declaring the right of the husband to administer, is the power he had at Common Law to convert her personalty into possession during her life. This·position is not sound. The right to administer has always belonged to the husband, exclusively of all other persons. (*Humphrey* vs. *Bullen*, 1 *Atkyn.*, 459 ; *Sir George Sands's Case*, 3 *Salk*, 22.) While some have derived its foundation from the statute 31 *Edward III.*, on the ground that " the husband is the next and most lawful friend" of his wife, it has been insisted on the other hand, that it is a Common Law right, *jure mariti*, independent of any statute. ( *Watt* vs. *Watt*, 3 *Vesey*, 247 ; *Com. Dig., Title Adm., B.* 6 ; *Elliott* vs. *Gau.*, 2d *Phill.*, 19, 20.) It has also been supposed, but erroneously, that the husband was entitled as next of kin, in which relation it is manifest he does not stand. (*Fortre* vs. *Fortre*, 1 *Show*, 351 ; *Rex.* vs. *Bettesworth*, 2 *Stra.*, 1111.)

Whatever may have been the origin of the right, however, its existence was expressly confirmed and recognized by the *statute* 29 *Car. II.*, c. 3, § 25, which provided that the husbands of *femes covert*, dying intestate, may demand and have administration of their rights, credits, and other personal estates, and recover and enjoy the same, " in the same manner as if the Statute of Distributions had not been enacted."

This Act of 29 *Charles II.*, is the basis of our own statutory provisions. The law of this State is, that " in the case of a married woman dying intestate, her husband shall be entitled to administration in preference to any other person" (2 *R. S.*, 3d *ed., p.* 138, § 28), and " a husband, as such, if otherwise competent according to law, shall be solely entitled to administration upon the estate of his wife" (§ 30). In all other cases, it is only the relatives of the deceased entitled to a share in the estate, who may administer. To give a title, the party applying must not only be a relative, but also have an interest in the estate. But in the case

of the husband, his power of administering is not annexed to, or made dependent on his right to succeed to the estate. It is simply declared, that " he shall be entitled to administration in preference to any other person,"—that " a husband *as such*," that is, " as husband," *jure mariti*, as I understand it, shall have administration. The right of the husband to administer, therefore, is a naked abstract right, depending upon an express statutory provision. Whether it was an original Common Law right, or grew out of the statute 31 *Edw. III.*, one thing is clear, it never originated, as I shall shortly show, from the *interest* a husband had in the estate of his deceased wife.

2. Anciently, the Ordinary administered the goods of an intestate, and, after the *partes rationabiles* were deducted, was entitled to the whole residue of the estate, to be applied without any accountability to such purposes as his conscience might approve. The Ordinary was deprived of this power by the statute 31 *Edw. III.*, *St.* 1, *c.* 11, and was compelled to delegate it to the " next and most lawful friends of the deceased." The husband, then, administering became entitled, as all administrators were before the Statute of Distributions, to the exclusive enjoyment of the residue of the estate.

The enactment of the Statute of Distributions (22 *and* 23 *Car. II.*, *c.* 10), very naturally raised doubts, whether the husband's rights were not superseded thereby, and whether he was not bound to distribute the estate among the deceased wife's next of kin. To meet this point it was expressly declared by the statute 29 *Car. II.*, *c.* 3, § 25, that nothing contained in the Statute of Distributions should be " construed to extend to the estates of *femes covert* that shall die intestate, but that their husbands may demand and have administration of their rights, credits, and other personal estates, and receive and enjoy the same as they might have done before the making of the said Act."

Such, also, is the substantial purport of our own statute, which provides that if the husband shall die, " leaving any

assets of his wife unadministered, they shall pass to his executors or administrators as part of his personal estate"[*] (2 R. S., 3d ed., p. 139, § 30); and, "if letters of administration on the estate of a married woman shall be granted to any other person than her husband, by reason of his neglect, refusal, or incompetency to take the same, such administrator shall account for and pay over the assets remaining in his hands, after the payment of debts to such husband or his personal representatives" (§ 31). If there ever was any just ground of doubt, whether the statute of distributions affected the right of the husband to the estate of his deceased wife, it was settled in England by the statute of 29 Car. II. The language of the Statute of Distributions was not probably designed to apply to the case of a *feme covert;* but still, to keep the matter clear, it was thought fit by our Legislature, in re-enacting it, to declare that the " provisions respecting the distribution of estates, shall not apply to the personal estates of married women, but their husbands may demand, recover, and enjoy the same as they are entitled by the rule of the Common Law." (2 R. S., 3d ed., p. 161, § 83.)

Instead, therefore, of the husband having a right to administer, because he was entitled to the estate, it appears, *e converso,* that he became entitled to the estate, because he had a right to administer, the Statute of Distributions never having deprived him of the interest in the residue of the estate, which, before the passage of that statute, had been enjoyed by all administrators.

Now, the Acts of 1848 and 1849, do not undertake to disturb the law in regard to the estates of married women dying intestate. They are authorized to take, hold, convey and devise, but in default of a will, the estate is transmitted after death precisely as it was, before these acts were passed. A married woman may sell or bequeath her personal estate, but if she dies intestate the law declares who

[*] Fielder & Fielder *vs.* Hanger, 3 Hagg., 769.

shall take it. Now, as before, if she dies intestate, the husband may demand administration, or if a stranger administer, he is entitled to the residue after payment of debts, and as to him the Statute of Distributions is a nullity. That statute does not apply to the case of a *feme covert* dying intestate. The relatives or next of kin of a *feme covert* have never had, by Common or Statute Law, any right to a distributive share of the estate of a married woman, except such as grew out of the *partes rationabiles*, or where the disposition of the estate was made a matter of settlement or contract. Where the settlements or marriage contracts have proceeded no further, than to declare that the property should belong to the wife, in the same manner as if she were sole and unmarried, and have not provided for its disposition after death, the husband has taken it. Thus, where a *feme covert* has power to dispose of the estate by will, which she executes, but without appointing an executor, administration will be granted to the husband *cum testamento annexo*. (*Salmon* vs. *Hays*, 4 *Hagg.*, 386.) In *Molony* vs. *Kennedy*, 10 *Simon*, 254, cash and bank notes, the separate property of the wife, were held on her death to belong to her husband without administration, on the ground that not having disposed of it, as she might have done, by deed or will, *the quality of separate property ceased at her death*, and her husband was entitled, *jure mariti*. Also in *Proudley* vs. *Fielder*, 2 *M. & K.*, 57, it was stipulated in marriage articles, that money in the funds belonging to the intended wife, should be for her sole and separate use, as if she were sole and unmarried, and the wife died without having made any appointment of her separate property, it was held that her husband was entitled to it as her administrator and not as her next of kin.

A settlement of property to the use of a *feme covert*, with the same power and control as if she were sole and unmarried, is an approximation by contract as nearly as may be, to the state of her personalty, as settled by the Acts of 1848 and 1849, and these English decisions are, there-

fore, clearly in point.  I cannot, accordingly, see that these Acts, which have enabled a married woman to have the sole control and absolute ownership of her property during her life, with power to sell and convey, and also to regulate its disposition after her death, have at all altered the law as to the administration of her personalty, in case of intestacy.  Where the wife has failed to exercise the privilege conferred upon her by these new statutes, and dies intestate, possessed of personalty, her husband has still the sole right to administer, and as administrator, to retain the residue of the estate after the payment of debts, to his own use.  The right of representation, unless he be incompetent, and the right of succession to the property, are still exclusively vested in him, to be defeated only by a valid will.  Letters must, therefore, issue in this case to the husband.