Vallance agt. Bausch.

WELLES, Justice, concurred.*
JOHNSON, Justice, dissented.

NOTE.—This case is not in conflict with *Phillips* agt. *Gorham*, 17 *N. Y. R.* 270, or *Laub* agt. *Buckmiller, id.* 620; but concurs rather with the views of SELDEN, J., in *Voorhees* agt. *Child's executors, id.* 358, and of COMSTOCK, J., in *New-York and New-Haven Railroad Company* agt. *Schuyler, id.* 604.

---

# SUPREME COURT.

CATHARINE VALLANCE, appellant, agt. JACOB BAUSCH, respondent.

The personal property of a *married woman*, continued in her, or acquired and held by her as a married woman, under the provisions of the statutes of 1848 and 1849, go, on her death, without having made any disposition thereof by will or otherwise, *absolutely to the surviving husband* as his own, and not to her next of kin.

And the husband is so entitled to it, as before those acts, *as husband*, and as an incident of the marriage, and flowing from it, and not merely as an incident of *his administration*, or rights of administration on her estate. (*See McCosker* agt. *Golding*, 1 *Brad.* 64, *which holds that the husband's right to such property is founded solely on his right to administer on her estate.*)

And these marital rights of the husband, under which he takes such property, are not inconsistent with, and are not, therefore, presumed to be abrogated by the statutes of 1848 and 1849. His right of succession may be a marital right, and *vest* in him by the marriage, but it vests *subject* to the rights of the wife to hold, use, enjoy and dispose of her property as freely and as absolutely and exclusively as she could, had she continued single.

No doubt it was competent for the legislature to abolish or change prospectively the right of succession of the husband to his wife's undisposed of personalty, and his right as tenant by the curtesy in her undisposed of realty in which she had an estate of inheritance; but the legislature intended to take away neither of these rights by the acts of 1848 and 1849. (*Disagreeing with the case of Billings* agt. *Baker*, 15 *How. Pr. Rep.* 525; POTTER, Justice.)

*New-York General Term, May*, 1859.
*Before* DAVIES, CLERKE *and* SUTHERLAND, *Justices.*

---

THIS is an appeal from the decree of the surrogate of New-York, admitting to probate the will of Catharine E. Bausch, the wife of the respondent.

JOHN W. EDMONDS, *for appellant.*
R. M. HARRINGTON, *for respondent.*

By the court—SUTHERLAND, Justice. The testatrix was the owner of certain personal property, and, during coverture, made her will, bequeathing the same, bearing date December 1st, 1856. She died on the 27th of March, 1857, leaving no children, but leaving her husband, the respondent, and the appellant, her mother, her surviving.

The appellant attended, as her next of kin, at the probate, and filed objections thereto, and prayed to have said objections heard ; but the surrogate decided that she could not be heard in the premises, and had no interest, right or title in or to the goods, chattels and credits, whereof the said Catharine died the owner and in possession ; but that the same belonged, after due administration, to the respondent, who proposed the will, as her husband ; and, therefore, that the appellant had no interest in the matter of the probate of the will.

It does not expressly appear, but it is presumed, that the marriage took place subsequent to the acts of 1848 and 1849, for the more effectual protection of the property of married women ; or, if it took place before those acts, that the property of the wife was acquired by her subsequently, so that she had, as a married woman, all the rights in and over the property intended to be given or secured to married women by those acts, irrespective of any constitutional question, or of any vested right of the husband.

The question, then, is, to whom does the personal property of a married woman, continued in her or acquired and held by her as a married woman under the protection of those acts, go on her death, without having made any disposition thereof by will or otherwise, the husband surviving ? Does the husband succeed and take it absolutely, or does it go to her next of kin ?

The surrogate held in this case, as he did in *McCosker* agt. *Golding* (1 *Bradf.* 64), that the statutes of 1848 and 1849 had not in such case made any alteration in the distribution or right of succession; that the property passed to the surviving husband absolutely, subject to the payment of the wife's debts, founding his right to the property on his sole right, if otherwise competent, to administer on her estate.

The learned and able brief submitted by the counsel for the appellant in this case is mainly intended to show that the husband's right to the personal estate of his wife, dying intestate, was not, prior to the acts of 1848 and 1849, an incident merely of his administration or right of administration on her estate, but a right as husband, incident to or arising from the marriage relation, existing and continuing in him in the lifetime of the wife, and as such that it would be inconsistent with the object and provisions of the acts of 1848 and 1849, and with the sole and separate rights and interests intended to be given and secured to marrried women in and over their property by those acts, and, therefore, was abrogated by those acts.

It must be conceded, I think, that if, since the acts of 1848 and 1849, the husband is entitled to the undisposed of personalty of his wife on her death, he takes it as husband, and not as administrator.

His right of administration is positive and certain by statute, and it may be necessary for him to administer on her estate in order to recover by action or to reduce into his possession her choses in action or chattels in the possession of third persons; but it is presumed that a voluntary payment to him and discharge by him of a bond or note belonging to the wife's estate, without or before administration, would be perfectly good. Who could object?

It may be admitted that this right to her personalty would follow from his certain and positive right of administration, and from the exception from the statute of distribution of his wife's estate, and the absence of any accountability or liability on his part as administrator or otherwise, except for the debts

of his wife; and yet, why was he excepted from the statutes of distribution, except as husband? and why his certain and positive right of administration, if otherwise competent, except as husband? and why, if any other person administered, or the husband died without having fully administered, and administration *de bonis non* was granted to a third person, was such other administrator, both at common law and by statute, a mere trustee for the husband or his representatives? (2 *Kent's Com.* 136; 3 *Rev. Stat. 5th ed.* § 30.)

The language of the statutes, in excepting the estates of married women from distribution, is, that "their husbands may demand, recover and enjoy, the same *as they are entitled by the rules of the common law.*" (3 *Rev. Stat. 5th ed.* § 86.)

It is said in the books, that the husband is entitled to administer for his own benefit as husband, and that he is entitled for his own benefit to all of his wife's chattels real, things in action, and every species of personal property, whether reduced to possession or contingent, or recoverable only by suit. (2 *Kent's Com.* 135; *Butler's note* 304 *to Lib.* 3 *Co. Litt.*) But he could not take, as administrator of his wife, that which he was absolutely entitled to in the lifetime of his wife; and at the common law, by the marriage he became absolutely entitled to all her goods and chattels then in her possession, or which came into her possession after the marriage, and to such of her choses in action as he should reduce into his possession during her life.

I think, in giving construction and effect to the statutes of 1848 and 1849, as to the personal estate of married women, the common law or statutory right of the husband, when those acts were passed, even to the choses in action of the wife, not reduced into possession in her lifetime, should be considered as one of his marital rights, commencing with the marriage, continuing in him during their joint lives, and surviving on her death.

Indeed, it has been recently expressly held by the court of appeals, in the case of *Westervelt* agt. *Gregg* (2 *Kernan*, 202), that the husband, in the lifetime of the wife, had a vested prop-

erty or interest in his wife's choses in action, not reduced into possession, which the statutes of 1848 and 1849 could not constitutionally take away.

If the right of the husband to reduce the wife's choses in action into his possession in her lifetime, or after her death, in case he survived her, was property and a vested right or interest in the husband in the lifetime of the wife, certainly her death could not divest it, the right to reduce her choses in · action into his possession absolutely and for his own benefit remaining in him after her death, as fully and completely as before.

When the acts of 1848 and 1849 were passed, the husband took and had by the marriage, absolutely as his own, not only the goods and chattels of his wife in her possession, and also a right during their joint lives to reduce her choses in action into possession for his own benefit, by action or otherwise; but he also took and had by the marriage, and held during their joint lives, a right after her death, if he survived her, at common law and by statute, as her administrator or otherwise, to take and hold, reduce into his possession, and recover absolutely for his own use and benefit, subject to the payment of her debts, all of her chattels, personal estate, and choses in action, which he had not reduced into his possession in her lifetime, or which had not become his absolutely prior to her death, by being by her reduced into her possession.

Now, the right of the husband after the death of the wife to take, reduce into his possession and keep as his own, her choses in action and personalty after paying her debts, being, in the lifetime of the wife, just as positive and certain as his right to reduce her choses in action into his possession in her lifetime, if the one flowed from the marriage and was a vested right in the husband in the lifetime of the wife, the other also flowed from the marriage, and was a vested right in the husband in the lifetime of the wife.

The exercise of either right depended, of course, upon the life of the husband—both rights were liable to be defeated by his dying before his wife; but if he lived or survived his wife,

both rights were fixed and certain; and I do not see how the court of appeals could have held otherwise than they did in *Westervelt* agt. *Gregg*, that the right of the husband in and over the choses in action of his wife, when the acts of 1848 and 1849 were passed, was a vested right. Certainly its liability to be defeated by the death of the husband did not make it contingent, or prevent it from being vested; otherwise, every · expectant estate or right of possession, to be exercised, or to take effect in possession in the lifetime or on the death of another, would be contingent; as the remainderman or holder of such right of possession might die before he exercised the right, or before the person on whose death his expectant estate or interest was to take effect in possession. (2 *Cruise Dig.* 270; *Fearne, Con. Rem.* 216; 7th ed.; 2 *Vesey, J. p.* 357.)

As the law was when the acts of 1848 and 1849 took effect, the husband, by the marriage, took a certain and positive right to all his wife's choses in action, liable to be defeated only by his death, before he had exercised the right and reduced them into his possession, leaving her surviving.

As to his right to her choses in action as her survivor, his right of administration on her estate was positive and certain by statute, if not at common law; it might have been necessary for him to administer to enforce her rights in action; but if he did administer, his letters of administration were only evidence of his common law right and title, and beneficial interest as husband.

As to the goods, chattels and personalty of the wife in her possession at the time of the marriage, or which came into her possession afterward during the marriage, there is not a colorable reason for saying that on her death he took them as her administrator, or as an incident merely of his right of administration, for they must have absolutely vested in him as his own, as husband, in her lifetime.

It does not appear either in this case, or the case of *McCosker* agt. *Golding* (1 *Bradf.* 64), whether the personalty of the testatrix consisted wholly or in part of goods, chattels and property actually in her use and possession in her lifetime, or

Vallance agt. Bausch.

of choses in action, rights and credits, which she had never reduced to her possession.

I think, therefore, that in this case, the appellant has a right to take the position, that if, since the acts of 1848 and 1849, on the death of the wife without having disposed of her personalty, by will or otherwise, the husband is entitled to it absolutely as his own, subject to the payment of her debts, that he is so entitled to it, as before those acts, as husband, and as an incident of the marriage, or flowing from it, and not merely as an incident of his administration, or rights of administration on her estate.

But, giving the appellant the benefit of this position, does it follow that this right of the husband would be inconsistent with the rights intended by the acts to be given and secured to married women in and over their property, so that it must be presumed this right of the husband was intended to be abrogated thereby? I think not. After the most careful analysis of words and principles bearing on this question, I can see no such inconsistency. The act of 1848 is entitled, "An act for the more effectual protection of the rights of married women," and that act and the act of 1849, amending it, were intended to give, and do give to a married woman the separate use and absolute disposition of her property, real and personal, by will or otherwise, as if she were a *feme sole*. She may use and enjoy it, and dispose of it as freely and as absolutely and exclusively as she could had she continued single; but she is nevertheless a married woman, and must dispose of it as a married woman; and admit, that her husband, on her death, succeeds to her undisposed of personal property, as husband and not as administrator; *his* right of succession, *as husband*, would no more interfere with her rights in and over the property in her lifetime, than would the succession of her mother or child as *next of kin*. The right of succession is not a right, but an incident of property, given to it by law. The inheritable quality or incident of real estate, *as to its possessor*, may be the measure of the quantity of his estate or interest, but it cannot be called *his* right, but rather the right of his

heirs.   What other or further right of property is there or can there be, than the right of its free and exclusive use and enjoyment during life, with a right of free and absolute disposition ?   These rights the married woman can take, and has under the acts as to her personalty, without interfering with the right of succession of her husband.   His right of succession may be a marital right, and *vest* in him by the marriage, but it vests *subject* to these rights of the wife, and thus can never interfere with them.

There cannot be two antagonistic rights of possession and enjoyment in different persons in the same property at the same time ; and, therefore, the acts of 1848 and 1849 have abrogated the husband's common law right to the use, rents and profits of his wife's real estate during their joint lives, and also his common law right to the disposition of her personalty during their joint lives ; but there might be a hundred successive estates in remainder, existing in different persons at the same time, and vested too, limited upon an estate for life in possession, without at all interfering with the estate, right of possession, and enjoyment of the grantee or holder of the life estate ; and if you give to the grantee or holder of the life estate in possession an absolute right or power of disposition of the property, this does not prevent the estate of the remainderman from being technically vested, subject to such right and power of disposition, although it may infinitely diminish the probability and value of the remainderman's expectant future right of possession.   The remainder would be vested, if the remainderman was a person ascertained, and in being, and capable of taking the possession immediately on the termination of the estate, for life in possession, without the holder of the estate for life having exercised his absolute power of disposition.

Before the Revised Statutes, a general devise of real estate, without specifying any particular estate, with an absolute power of disposition annexed, gave a fee ; but a devise for life in express terms, with a like power of disposition, gave only a life estate.   (*Jackson* agt. *Robbins,* 16 *John.* 538.)

The article of the Revised Statutes, as to "powers," permits

future estates to be limited on a particular estate for life or years, with absolute power of disposition, except as against purchasers and creditors; and when there is no limitation of a remainder on such particular estate of the grantee of the power, it declares that he shall be entitled to an absolute fee.

Before the Revised Statutes, there could be a limitation of personal goods, chattels and money, by way of remainder or executory devise after a bequest for life. (*Hyde* agt. *Parratt*, 1 *P. W.* 1; *Tissen* agt. *Tissen*, *id.* 500; *Westcott* agt. *Cady*, 7 *John. Ch. R.* 335; *Moffat* agt. *Strong*, 10 *John.* 12.) But a grant or bequest of goods and chattels for life, with an absolute power of disposition, made the gift as to the first taker absolute, and any ulterior limitation over, void. (*Fearne's Exec. Dev. Powell's ed.* 167, 226, *n.* 1; *arguments of counsel in Jackson* agt. *Robbins*, 16 *John.*)

Yet, if a husband by marriage articles, or post-nuptial agreement, gave his wife her goods and chattels, or the use of her goods and chattels for life, with absolute power of disposition, there is no doubt, in case of her death without having disposed of them, that the husband would have taken them as his own, by virtue of his original right and title as husband. (*See the cases cited by Mr. Bradford in McCosker* agt. *Golding*, 1 *Bradf.* 64, *above cited, and Moehring* agt. *Mitchell*, 1 *Barb. Ch. R.* 271; *Strong* agt. *Wilkin*, *id.* 9.)

No doubt the rights of the husband in his wife's personalty and in her real estate, which he acquired by marriage, and by marriage and the birth of issue as *tenant by the curtesy*, being rights given him by law, he could waive or release them absolutely, either by ante or post-nuptial agreement; but the point is, that if the instrument went no further than to release and give to the wife her goods and chattels, or the sole and separate use of her goods and chattels, or of her real estate, for her life, with an absolute power of disposition, his right of succession to the goods and chattels, and his right as tenant by the curtesy in her real estate, would have remained in him as husband, on her death, without having disposed of them. *The presumption would have been, that he made the agreement in favor of his wife*

Vallance agt. Bausch.

*with a knowledge of his legal rights as husband, and that he did not intend to release them any further than the express words of the instrument and the specific rights and power thereby given to his wife required.*

Precisely so, in construing these acts of 1848 and 1849, we are to presume that the legislature passed them with the knowledge of the husband's common law rights, and that these rights were not intended to be taken away any further than was necessary to secure to married women, as against their husbands, the free, sole, separate use and enjoyment, and absolute disposition of their property. These are all the *beneficial* rights of property that could be conferred on them, or secured to them.

An alteration by the statutes of the legal right of succession, or of the legal disposition of their property on their death, without having disposed of it by will or otherwise, would have been, unnecessarily for the declared purposes of the acts, taking rights from the husband, and conferring them, not on his wife, but on others.

What principle of public policy or political economy would have induced the legislature to take away the husband's right of succession to his wife's undisposed of personalty and give it to her next of kin, after securing to the wife during her life all the beneficial rights she ever had or could have as a *feme sole* in or over it?

If the force and direction of one's affections while living should direct the legal disposition of property after death, I should not like to believe that a majority of married women would ask for the construction of these acts insisted on by the appellant.

No doubt it was competent for the legislature to abolish or change prospectively the right of succession of the husband to his wife's undisposed of personalty, and his right as tenant by the curtesy in her undisposed of realty, in which she had an estate of inheritance; but I think the legislature intended to take away neither right by these acts, notwithstanding the able opinion of Mr. Justice POTTER on the latter point, in *Billings agt. Baker and others* (15 *How. Pr R.* 525).

Vallance agt. Bausch.

I express here an opinion on this question, whether the right or estate of tenant by the curtesy has survived the acts of 1848 and 1849, because the opinion of Judge POTTER in the case last cited was particularly cited and insisted on, on the argument of this case ; and because I admit, after conceding to the appellant her position in this case, that the husband's right to his wife's undisposed of personalty on her death, if he has any since the acts, is a right as husband existing initiate in the lifetime of the wife, and which has survived the acts ; that the reasons above stated to show that such right is not inconsistent with the acts, in the main, apply equally to the question of the husband's right or estate as tenant by the curtesy.

Of course, both questions are mere questions of intention— how far the acts were intended to operate.

If these rights of the husband have been taken away by the acts, it is done by implication.

In *Bower* agt. *Lease* (5 *Hill*, 226), the court say : " As laws are presumed to be passed with deliberation, and with full knowledge of all existing ones on the same subject, it is but reasonable to conclude that the legislature, in passing a statute, did not intend to interfere with or abrogate any former law relating to the same matter, unless the repugnancy between the two is irreconcilable. Hence, a repeal by implication is not favored," &c. (*See also McCartee* agt. *The Orphan Asylum Society*, 9 *Cowen*, 437, 506.)

Much stress has been put on the words, " and shall continue her sole and separate property, as if she were a single female," and the words, " but shall be her sole and separate property, as if she were a single female," &c., in the first and second sections of the act of 1848, and on the words, " and the same shall not be subject to the disposal of her husband, nor *be liable for his debts*," in the first section of the act of 1849, as showing these acts to be irreconcilable with the continuance of the rights of the husband in question.

As to the words above quoted from the act of 1848, taken literally, they are simply absurd, and would involve even a legislative impossibility.

The property of a single female cannot literally *continue* in her after marriage as if she were a single female. The act of 1848 was intended to secure to a married woman the sole and separate *use* of her property as if she were single, and, from the peculiar phraseology above quoted, was probably intended to give her, and probably would have given her, a right to dispose of it (otherwise than of her personalty by will), as if she were single ; but the act of 1848 probably did not remove the disability placed on married women by the Revised Statutes, of disposing of their personalty by will ( *Wadams* agt. *The American Home Missionary Society*, 2 *Kernan*, 415) ; nor have both acts removed the disability of coverture as to her property, so that she can bind herself personally as a *feme sole* by her contracts, and thus *at law* lead to an involuntary alienation of her property by judgment and execution. ( *Yale* agt. *Dederer*, 17 *How. Pr. R.* 165 ; *S. C.* 18 *N. Y. R.* 265.)

These acts have not, therefore, in all respects, removed the disability of coverture as to the property of married women. They have removed it, so far as it was for their benefit, and no further.

Before the personalty of married women, dying intestate, can go to their next of kin, the exception of their estates from the statute of distribution must be repealed—who can say that the acts of 1848 and 1849 imply such repeal, or that such repeal would be for *their* benefit ? So as to the phraseology of the act of 1849, " and the same shall not be subject to the disposal of her husband, or liable for his debts ;" the act was intended to protect the property of the wife against the husband and his debts in her lifetime. Of what consequence is it to her whether the property is sold for the debts of her husband, or of her next of kin, after her death ?

For these reasons, which have been stated much more at large than I intended before I looked into the cases bearing on the construction of these acts, I am of the opinion that the decree of the surrogate in this case should be affirmed with costs.