WILLIAM L. JOHNSON and GEORGE G. JOHNSON, partners, &c., *vs.* REBECCA CUMMINS and GEORGE CUMMINS.

1. In the absence of any trust deed or settlement, defining and limiting the mode in which a separate estate shall be charged by the wife, equity will charge it, while she lives apart from her husband, with debts contracted by her for her own benefit, without any express appropriation by the wife, of the estate or any part of it, to the payment of the debt.

2. The separate estate of a married woman is subject in equity to the payment of debts contracted in reference to, and upon the faith and credit of the estate.

3. Where a married woman lives apart from her husband, and having a separate estate, contracts debts, the court will impute to her the intention of dealing with her *separate estate*, unless the contrary is shown.

4. It is no defence to a claim upon the separate estate of the wife, that the separate estate of the wife created by the statute (*Nix. Dig.* 503, § 1,) is a *legal* estate, and that the enforcement of the claim in this aspect, is not properly within the cognizance of a court of equity.

5. The jurisdiction of a court of equity over the separate estate of a married woman rests not merely upon the ground that it is an equitable estate, but upon the ground that it is her *separate* estate, which is *equitably* subject to contracts and engagements entered into by her, which are not legally binding upon her personally, and which can not be enforced at law.

6. Nor is it material, whether the estate is vested in a trustee, the interest of the wife being merely equitable, or directly in her, so that she has both the legal and equitable interest.

7. The statute (act of 1852, for the better securing of the property of married women,) does not impair the right of the husband to an estate by curtesy in the separate property of the wife.

8. Nor, as it *seems*, does the act take away the husband's right to administer upon, and to take as his own, the personal property of the deceased wife, where she dies intestate.

---

The complainants' bill charges, that on the first of May, 1860, Rebecca Cummins was indebted to the complainants, who are engaged in mercantile business under the partnership name of W. L. & G. W. Johnson, in the sum of $108.94, which indebtedness was contracted by the said Rebecca for merchandise sold and delivered to her, between the first of March, 1854, and the first of May, 1860, with interest thereon. The said Rebecca, in the year 1826, was married to George Cummins, and is still his wife, but for eight years last past she has been living separate from her husband. Prior to the first of April, 1851, she was possessed of considerable estate, of about the value of $5000, as of her own *separate property*, and with such property about the first of April, 1851, she purchased a farm, containing one hundred and fourteen acres, for the sum of $3438.30, and took a conveyance therefor, in the name of Henry Vreeland, in trust for herself. About the fifth of February, 1852, the said Vreeland executed under his hand and seal a declaration of trust, wherein

he declared that the said lands were purchased with the separate property of the said Rebecca, and that he held the same under the said conveyance in trust for her, as her separate property. About the ninth of March, 1855, Vreeland, by the direction of the said Rebecca, conveyed his legal estate in the lands to John Green, and was discharged from his trusteeship. On the twenty-third of April, 1855, the said Rebecca, in her own name, without joining with her husband, she then being separated from him, conveyed her estate in the said lands to the said John Green, for the sum of $4641.70, and received the said consideration money for her own separate use. About the twenty-fourth of November, 1855, Green conveyed the said land to Amos Swayze, for $5000, and about the first of March, 1858, Swayze conveyed the land to the said Rebecca in her own name, her husband not being named in the deed, for the consideration of $5350. The said Rebecca is still the owner of said land as her separate estate, which is worth the sum of $5350, and encumbered only to the amount of $350, by a mortgage given by the said Rebecca in her own name to one James K. Swayze.

Since the year 1851, the said Rebecca has, with her separate estate, always transacted business in her own name, and since her separation from her husband, she has conducted the farming business in her own name, and for her own separate use and benefit; buying, selling, and trafficking in her own name, giving bonds, mortgages, and promissory notes, as a feme sole, and transacting business generally as an unmarried woman. Since April 1st, 1858, she has lived upon, and carried on the business of the farm in her own name, and for her own separate use, and is possessed of considerable personal property upon the said farm, which she holds in her own name, with which the farm is worked and cultivated. The debt of the said Rebecca to the complainants was contracted for goods, clothing, flour, groceries, and other necessaries sold to her upon her own credit by complainants out of their store, and were such articles as were necessary for herself and family, and the business of the

farm, and were purchased for the benefit of her separate estate, and were consumed and enjoyed by her in the maintenance and support of herself, and carrying on the farm for her own use and benefit, and were sold by the complainants to the said Rebecca entirely upon the credit of her separate estate, and solely upon the faith of her own responsibility.

Her husband, the said George Cummins, is now and has for some years been insolvent, and the owner of no property. For the last eight years he has not lived with his wife, nor exercised any control over her affairs, and the complainants' debt cannot be collected from him. On the first of May, 1860, the said Rebecca gave to the complainants her note, with her son, Morris G. Cummins, as security, whereby she promised to pay the said sum of $108.94 to the complainants or bearer. At the time the said note was given, the said Morris G. Cummins resided with his mother, and still resides with her: he then was, and still is, a man of no property, and unable to pay the debt. The said note was not taken in satisfaction of the debt, or upon the responsibility of the said Morris, but upon the credit of the said Rebecca and her separate estate. On the seventeenth of July, 1862, the complainants instituted a suit at law for the collection of the said note, against the said Rebecca and Morris G. Cummins, to which the defendant filed her plea, alleging her coverture with the said George Cummins in bar of any recovery against her in the said suit, and alleging no other defence thereto; whereby the complainants were compelled to abandon their suit, and being without remedy at law, are compelled to resort to equity for relief.

The prayer of the bill is for a discovery touching the defendant's separate estate, that an account may be taken thereof, and of the complainants' debt with interest, and that the same may be charged upon the separate estate of the said Rebecca, and the payment thereof decreed to be made out of the said separate estate, and that a sale of so much thereof as may be necessary to satisfy the said debt, may be

made by the decree, and under the direction of this court. To this bill there is a general demurrer for want of equity.

*J. M. Robeson,* for Rebecca Cummins, in support of the demurrer.

The demurrant is possessed of no separate estate. All the property she held at the time of filing the bill was real estate in fee, and personal estate held by herself as a feme sole, as *general* property, and not specially for her own use and benefit.

There is no case where the wife's *general* property has been held liable for her debts, while the husband was living.

The husband, at common law, was bound to take care of his wife and children.

As to the real estate, bill shows it is not *separate* estate. Nothing but the act of 1852 keeps the husband from the enjoyment of it. She could only divest herself of it by joining in a deed with her husband. That act does not convert the legal estate of the wife into an equitable estate.

Under the act of 24th March, 1862, (*Pamph.* 271) the complainant has adequate remedy at law. Prior to that act the wife could not have bound either herself or her husband, or charged the estate.

The bill does not set out the nature and character of the wife's estate with sufficient certainty.

*Mr. Robeson* cited 2 *Kent* 145; 4 *Ibid.* 202; *Leaycraft* v. *Hedden,* 3 *Green's Ch. R.* 512; *Young* v. *Paul,* 2 *Stockt.* 401.

*Depue,* for the complainants, contra.

As to remedy at law. The act of 1862 does not exclude jurisdiction of this court. It was intended to give concurrent jurisdiction to courts of law. Again, it was only intended to apply where parties are living together, not where living apart.

As to uncertainty of bill. It was not necessary to make more specific charges than we have done. *Wheaton* v. *Phillips,* 1 *Beas.* 221.

I *

There are two classes of authorities. In the first, the distinction is chiefly in regard to the evidence where the wife is living separate, and where with her husband. Where she is living separate, the intent to bind the estate will be *presumed* from the fact of contracting the debt. Where she is living with her husband, the intent must be *proved*. In the second class, the distinction lies in the character of the estate. Where lands are charged, it must be in writing; where personalty, it may be by parol.

The wife's separate estate will be bound by contracts which do not refer to, or mention it. *Hulme* v. *Tenant*, 1 *Bro. Ch. R.* 16.

Equity will enforce against the separate estate, those debts which it is equitable and just to enforce. *Johnson* v. *Gallagher*, 7 *Jur. N. S.* 273; 2 *Story's Eq. Jur.*, § 1401, *a; Coleman* v. *Wooley's Ex'r*, 10 *B. Mon.* 320.

As to relief. *Wheaton* v. *Phillips*, 1 *Beas.* 221; *Dickerman* v. *Abrahams*, 21 *Barb.* 551.

As to form of decree. *Stuart* v. *Kirkwall*, 3 *Mad.* 387; *Francis* v. *Wigzell*, 1 *Ibid.* 145; *Owens* v. *Dickenson*, 1 *Craig & Ph.* 48; *N. A. Coal Co.* v. *Dyett*, 7 *Paige Ch. R.* 1; *Gardner* v. *Gardner*, *Ibid.* 112; *Ewing* v. *Smith*, 3 *Dess.* 417.

*Mr. Depue* further cited 1 *White & Tudor's Lead. Cases* 333; *Murray* v. *Barlee*, 3 *Mylne & K.* 209; *Corbett* v. *Poelnitz*, 1 *T. R.* 5; *Bell on Husband and Wife* 513, 516, and cases there collected; *Bullpin* v. *Clark*, 17 *Vesey* 365; *Tullett* v. *Armstrong*, 4 *Beav.* 319; *Jarman* v. *Wilkerson*, 7 *B. Mon.* 293; *Curtis* v. *Engle*, 2 *Sandf. Ch. R.* 287; *Gardner* v. *Gardner*, 22 *Wend.* 526; *Colvin* v. *Currier*, 22 *Barb.* 387; *Billings* v. *Baker*, 28 *Barb.* 343.

THE CHANCELLOR. The design of the bill is to charge certain real estate in the possession and enjoyment of the wife, with a debt contracted by her for the benefit of the estate, and for the support of herself and her family while living separate from her husband.

It is urged, in support of the demurrer, that the wife had

no separate property in the estate in question, but that it was subject to the marital rights of her husband. The clear allegation of the bill is that she was possessed, as of her own separate property, of an estate of about the value of $5000, with a part of which she purchased the farm in question, and took a conveyance thereof in trust for herself; that the trustee, by a declaration of trust executed under his hand and seal, declared that the land was purchased with the separate property of the wife, and that he held the same under the said conveyance, in trust for her as her separate property. The bill further alleges, that the land was subsequently, and subsequent to the passage of the act of 1852, " for the better securing the property of married women," conveyed to the wife, the husband not being named in the deed; that the wife is still the owner of the said land as her separate estate; that since the first of April, 1858, soon after the title was conveyed to her, she has lived upon, and carried on the business of the farm in her own name, and for her own separate use; and that she is possessed of considerable personal property upon the said farm, which she holds in her own name, and with which the same is worked and cultivated.

The demurrer necessarily admits the truth of the facts stated in the bill, so far as they are relevant and well pleaded, although it does not admit the conclusions of law drawn therefrom.

The objection of the demurrant is, that the estate originally conferred on the wife was not given for her sole and separate use, so as to defeat the marital rights of the husband; and that the vesting of the property by the wife for her separate use, without the concurrence of the husband, was illegal and void. But how is that to be decided, upon the present state of the pleadings, in the face of the averments contained in the bill and admitted by the demurrer? If the original gift of the estate to the wife was insufficient in law to defeat the marital rights of the husband, and the trust created for the use of the wife was without the consent

or concurrence of the husband, and those facts are intended to be relied on as a defence to the complainants' claim, they should be distinctly averred in pleading.

This objection, it will be observed, is not raised by the *husband* for the protection of his rights. He was made a defendant to the suit, but permitted the bill as against himself to be taken as confessed. The wife, by leave of the court, defends alone. It is admitted that she has treated this property as her separate estate; that she has used, occupied, and enjoyed it as such; that she has gained credit upon the faith of her sole and separate ownership, and that the debt of the complainants was incurred for the benefit of that estate, and for her separate maintenance. Under such circumstances, the plea from the lips of the wife after a divorce from her husband, that the original creation of the separate estate was invalid, and that she had no title to the estate as against her husband, does not commend itself to the favorable consideration of a court of equity. If there be such defence, it should at least be distinctly averred and clearly proved.

For the purposes of the present inquiry, it must be assumed that the wife had a separate estate, which she might lawfully charge with debts created for the benefit of the estate, or for her own support and benefit.

In the absence of any trust deed or settlement, defining and limiting the mode in which the estate shall be charged by the wife, equity will charge the separate estate of the wife, while living apart from her husband, with debts contracted by her for her own benefit, or for the benefit of the estate, without any express appropriation by the wife, of the estate, or any part of it, to the payment of the debt.

The general principle is, that a married woman is enabled in equity to contract debts in regard to her separate estate, and that the estate will be subject in equity to the payment of such debts. In order to bind the separate estate, it must appear that the engagement was made in reference to, and upon the faith and credit of the estate. But where a mar-

ried woman living apart from her husband, and having a separate estate, contracts debts, the court will impute to her the intention of dealing with her separate estate, unless the contrary is shown. *Owens* v. *Dickenson*, 1 *Craig & Ph.* 48; 2 *Story's Eq. Jur.*, § 1401, § 1401 *a;* 1 *Lead. Cases in Eq.* 406.

The allegations of the bill bring the case within the well settled principles upon which equity administers relief in regard to the separate estates of married women.

The bill further alleges, that after the passage of the act of 1852 the estate was conveyed to the wife, and that since that time she has resided upon the estate, separate from her husband, and has carried on business in her own name and on her own account; and that during that period, for the purposes of the said estate, a part of this debt was created. To this part of the claim it is objected, that the separate estate of the wife created by the statute is a legal estate, and that the enforcement of the claim in this aspect is not the proper subject of the cognizance of a court of equity. This objection was directly met and overruled by the Chancellor in *Wheaton* v. *Phillips*, 1 *Beas.* 221.

The jurisdiction of a court of equity over the subject, does not rest upon the ground that the estate of the wife is an equitable estate merely, but upon the ground that it is her *separate* estate, which is equitably subject to contracts and engagements entered into by her, which are not legally binding upon her personally, and which cannot be enforced at law. Whether the estate of the wife is vested in a trustee, her interest being merely equitable, or whether the estate is vested directly in her, so that she has both the legal and equitable interest, is immaterial. By operation of the statute, she holds the land during her coverture as her separate estate, for her sole and separate use and benefit, free from the control, debts, or engagements of her husband, and exempt also from the claims of his creditors. It is as much chargeable in equity with her engagements as any other property which she may hold to her separate use. The statute has created an interest which before could only have been created

by a declaration of trust; but the interest of the wife in relation to the property, and to the equitable claims of creditors against it, are not essentially different from those which subsist in relation to her separate estate, when created by settlement or deed of trust. It is declared by the statute to be her sole and separate property as if she were a feme sole. The only difference is, that being a feme covert, she cannot, as a feme sole, make a valid contract touching the property, which can be enforced at law. Equity, therefore, applies the remedy by appropriating the property to the satisfaction of the debt. Nor is the jurisdiction of equity over the subject, affected by the fact that the legislature has given concurrent jurisdiction to the courts of law. If, then, the complainant's case is within the operation of the act of March 24th, 1862, *Pamph. L.* 271, which may well be doubted, it cannot affect the jurisdiction of this court or the complainants' title to relief in equity.

A question was raised upon the argument, as to the extent of the wife's interest in the property that can be reached or affected by the decree of the court, under the case presented by the bill. The determination of that point is in no wise essential to the decision of the question now under consideration, but it is proper to state that an intimation of opinion then made by the court was not well founded.

The design of the statute, *Nix. Dig.* 503, § 3, as plainly evinced, was to protect the estate of the wife in lands granted to her during coverture, from the power of the husband, and from the claims of his creditors. It declares that she shall *hold* the property to her sole and separate use, and that it shall not be subject to the disposal of her husband, nor be liable for his debts. The language of the statute may have full effect without at all impairing the right of the husband to an estate by curtesy. The better opinion therefore is, that the estate remains in the husband unaffected by the statute. This is in accordance with the clearly expressed opinion of Mr. Justice Vredenburgh, and seems to be the necessary result of the opinion of the Chief Justice in *Naylor* v. *Field*, 5 *Dutcher* 287; *Ross* v. *Adams*, 4 *Dutcher* 160.

A contrary opinion was held upon the construction of a statute of the state of New York, nearly identical with our own, in *Billings* v. *Baker*, 28 *Barb.* 343. But the decided weight of authority in that state is adverse to the decision in *Billings* v. *Baker*, and in accordance with the views expressed in the Supreme Court of this state. *Hurd* v. *Cass*, 9 *Barb.* 366 ; *Smith* v. *Colvin*, 17 *Barb.* 157 ; *Clark* v. *Clark*, 24 *Barb.* 581 ; *Vallance* v. *Bausch*, 28 *Barb.* 633 ; *Willard on Real Estate* 59.

And it seems to be settled, that the act does not take away the husband's right to administer upon, and to take as his own the personal property of the deceased wife where she dies intestate. *Shumway* v. *Cooper*, 16 *Barb.* 556 ; *Vallance* v. *Bausch*, 28 *Barb.* 633 ; *McCosker* v. *Golden*, 1 *Bradf.* 64 ; *Westvervelt* v. *Gregg*, 2 *Kern.* 202 ; *Ransom* v. *Nichols*, 22 *New York* 110.

The cases upon the subject, both in respect to the real and personal estate of the wife, will be found collected in 1 *Whittaker's Prac.* (ed. 1863) 177.

The demurrer must be overruled.