(42 App. Div. 439.)

### FOEHNER v. HUBER et al.

(Supreme Court, Appellate Division, Fourth Department. July 18, 1899.)

HUSBAND AND WIFE—RIGHTS OF HUSBAND UNDER MARRIAGE SETTLEMENT.
    Where a married woman, owning money on deposit in a bank, dies, leaving a valid will disposing of all her estate, and naming a third person as executor, her husband cannot maintain an action against the bank to recover such moneys, although an antenuptial agreement between the parties provides, in case he survives her, "he shall have the absolute title to all the personal property" left by her.

Appeal from special term, Monroe county.

Action by Valentine G. Foehner against Charles M. Huber, as executor, and others. From a judgment dismissing the complaint entered on findings, the plaintiff appeals. Affirmed.

The decision authorized the dismissal of the plaintiff's complaint as to both defendants, and declared that Huber, executor, "is entitled to the possession of the said fund in the hands of the Rochester Savings Bank for the purposes of administration; * * * that the Rochester Savings Bank should be directed to pay said sum and accrued interest to the defendant Charles M. Huber, as executor, * * * and the receipt of the said defendant Charles M. Huber, as executor, * * * shall be a sufficient voucher for such payment," and directing that Huber's costs be paid out of the fund. This action was commenced in May, 1898, to recover of the Rochester Savings Bank the sum of $1,567.75 and interest, which had been deposited in said bank by Maria Foehner, in her lifetime, between March 1, 1894, and December 1, 1897. Maria Foehner died in the city of Rochester on the 22d day of February, 1898, leaving a last will and testament, which was admitted to probate, wherein the defendant Huber is appointed executor, and letters testamentary were issued to him April 16, 1898, and he qualified as such executor. Plaintiff, after the death of Maria Foehner (who was his wife), demanded from the bank the amount due on the account of Maria Foehner, and the bank refused, and this action was commenced against the bank; and thereafter, by an order, the defendant Charles M. Huber, as executor, was made a party defendant, and the bank was discharged from liability on account of said fund "by holding said fund subject to the order of this court to the credit of this action," and it is found that the said fund is now in the hands of the said bank "subject to the order of the court herein." It is also found that no property whatever has come into the possession of the executor. It is also found "that said Maria Foehner died leaving certain debts and claims against her estate, and that defendant Charles

M. Huber is liable as executor for counsel fees and other necessary expenses of administration on said estate, and without said fund has no property in his possession out of which said claims and expenses can be paid." Maria Foehner left real estate of the value of about $10,000, and by her will gave legacies amounting to some $8,000 to her relatives, most of whom are nonresidents of the United States, which legacies are not made a lien or charge upon the real estate, and named the defendant Charles Huber as the residuary legatee. He has advertised for claims against the estate, and the time for publication expired on the 22d of October, 1898. Only two claims were presented against the estate during said time for the presentation, "both of which were paid by the plaintiff herein, Valentine G. Foehner, one being paid upon the day of the trial of this cause." Maria Howe, four days before her intermarriage with the plaintiff, on the 24th day of May, 1884, entered into an antenuptial contract with the plaintiff, containing mutual stipulations and agreements in contemplation of the marriage of the parties thereto, which contained, among other things, the following stipulation: "The said Mary Howe, for herself, her heirs, executors, and administrators, doth covenant and agree to and with the said Valentine George Foehner that he shall have the full and undisputed use and control, during the term of his natural life, of all of the real estate of which she shall die seised, and that, if the said Valentine George Foehner shall survive the said Mary Howe, he shall have the absolute title to all the personal property which may be left by the said Mary Howe." It was further agreed between the parties "that each of them will deal with his or her property in good faith during his and her life, and that neither of them will convey any of his or her property away by gift or other fraudulent device, or by any means whatsoever, except in the course of business, or for the purpose of legitimate gain, or for their mutual support." For the faithful performance of that agreement, the parties severally pledged their "good faith and honor, hereby promising and agreeing to abide by the terms of this undertaking until death us do part; and hereby instruct and require of our several heirs, executors, and administrators to faithfully keep and perform so much of this agreement as is to be observed after the death of either of us." In the answer of the executor it is alleged "that the fund deposited in the Rochester Savings Bank is all of the personal property of the said decedent which has come to the knowledge of this defendant; * * * and, without administration upon the said personal property so on deposit with the defendant Rochester Savings Bank, this defendant is powerless to pay any of the claims or debts against the estate of the said decedent, to pay the expenses for advertising the claims against the estate of the said decedent, for the necessary expenses of having the said will admitted to probate, and of his final account as such executor." In the opinion delivered by the trial judge he said: "The personal property or estate which a decedent leaves consists only of the residuum after the payment of debts and other charges thereon. The administrator is personally liable for funeral expenses, and is also liable to creditors to the extent of the personal estate which the decedent leaves. Who the general creditors are, and the amount of the debts, can be ascertained only in the due course of administration of the estate. The fact that the indebtedness of the decedent is small, and as far as ascertained has been paid by the plaintiff, cannot deprive the defendant executor of his right to have his liability as such legally determined. * * * My conclusion is that there is no cause of action in the plaintiff as against the bank, and therefore the complaint must be dismissed, both as to the bank and the defendant Huber as executor."

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

W. A. Southerland, for appellant.
Walter S. Hubbell, for respondents.

HARDIN, P. J. Notwithstanding the stipulation in the antenuptial contract between the plaintiff and his wife that, in case of his surviving her, he should have the absolute title to all "the personal

property which may be left by the said Mary Howe" (the testatrix), it was competent for her to make a will, as she did, and to name an executor thereof. When her will was probated and the executor qualified, he became entitled to take possession of the personal property, and convert the same into money, for the purposes of administration. It was his duty to pay such debts as were due from her estate. It became the executor's duty to advertise for claims against the estate, and it became his duty, out of the proceeds of the personal property, to pay any or all claims that were legitimately made a charge against the estate. Until he had accomplished the purposes of his administration, it could not be stated "what property the testatrix left." It is to be borne in mind it is only the title transferred to the plaintiff by the antenuptial contract of such residuum as should be left after the due administration of her estate. From the general tenor of the antenuptial contract it is apparent that the parties contemplated that each should be the owner and have the full enjoyment of his or her personal estate so long as they should both live. The language, to wit, "that each of them will deal with his and her property in good faith during his and her life," justifies the inference that each was to be the owner as long as life should continue. Therefore, until the death of the wife, she was in full possession and ownership of the property, and was entitled to use such portion as was necessary for her support, maintenance, or pleasure; and with a view of maintaining herself, or defraying her necessary expenses, she had a right to contract debts upon the faith of the personal property which she owned. In order to ascertain what those debts were, the office of executor or administrator was proper, and the mode prescribed by law for the settlement of the estates of deceased parties. Concurrent with her death it became the right of the surrogate to take jurisdiction of her personal estate, and, having acquired jurisdiction of her personal estate, it was competent for him to appoint an executor in case she left a will, as she did, or, in the absence thereof, to appoint an administrator. It was therefore proper for the savings bank to refuse payment to any person other than an administrator or executor having jurisdiction of her estate. The antenuptial contract was executory, and remained so up to the time of the death of the wife. We are not called upon to determine what right the plaintiff may have to enforce it in a court of equity. Colby v. Colby, 81 Hun, 221, 30 N. Y. Supp. 677; Gates v. Gates, 34 App. Div. 608, 54 N. Y. Supp. 454; 22 Am. & Eng. Enc. Law, 1006; Cannel v. Buckle, 2 P. Wms. 243; Gall v. Gall, 64 Hun. 601, 19 N. Y. Supp. 332, affirmed in 138 N. Y. 675, 34 N. E. 515.

Bradish v. Gibbs, 3 Johns. Ch. 523, was a case where, before marriage, a wife entered into an agreement with her intended husband that she should have power, during coverture, to dispose of her real estate by will, and she afterwards devised the whole of her real estate to her husband, and it was held that that was a valid disposition of her real estate in equity, and her heirs at law were decreed to convey the legal estate to the devisee. We see nothing in that case which supports the right of the plaintiff to maintain the action before us. In Stewart v. Stewart, 7 Johns. Ch. 229, an antenuptial

agreement was under consideration, and it was said incidentally that, where a wife dies without making any appointment, the property goes to the husband, as survivor, as if no settlement had been made; and it is said that where, after such settlement, money came to the wife from her father, and it was received by her husband and invested in bank stock, who, after her death, took out letters of administration on her estate, and received dividends on the said stock until his death, the testatrix of the husband was entitled to the stock, and that the administratrix de bonis non of the wife was accountable for it, as trustee, to the legal representative of the husband. We think there was nothing said in that case which sustains the contention of the appellant here, to the effect that the husband, without letters of administration having been issued, can maintain an action for moneys which were deposited in the name of the wife at the time of her death. In Hunter v. Hallett, 1 Edw. Ch. 388, it was held, viz.:

"Although a husband holds a bond and mortgage made out in favor of his wife, and receives the interest, yet this is not a reduction into possession. And, if she dies, he cannot sue upon it, without taking out letters of administration, even though he may be exclusively entitled. This appears to be a well-established rule, and one which cannot be dispensed with even in a court of equity."

In Clason v. Lawrence, 3 Edw. Ch. 50, it was held that, "although on the death of an only brother his sister and mother are entitled equally to his rights in personalty, yet they cannot file a bill for an account of it. An administrator should do so." A similar doctrine was laid down in Jenkins v. Freyer, 4 Paige, 47, and Latting v. Latting, 4 Sandf. Ch. 31. In Lockwood v. Stockholm, 11 Paige, 91, it was said:

"Previous to the Revised Statutes the husband could not have sustained a suit for a legacy or debt due to his deceased wife before coverture, without administering upon her estate; nor could his representatives maintain such a suit after his death, without suing out letters of administration de bonis non on her estate. But in the recent case of Roosevelt v. Ellithorp, 10 Paige, 514, I came to the conclusion that, where the husband survived the wife and afterwards died, the Revised Statutes authorized his personal representatives to sue for a debt due to his estate on account of, or in right of, his deceased wife, without administering on her estate also."

The case from which the quotation has been made was decided in 1844. It was said in the course of the opinion:

"And the only object in requiring letters of administration on her estate is to have some responsible person, who may be answerable to her creditors, if there should be any. If the husband intermeddles with the deceased wife's estate, without taking out letters of administration, the Revised Statutes make him liable for her debts, upon the presumption that he has assets belonging to her estate to pay them. But if the husband survives the wife and dies, either before or after taking out letters of administration on her estate, leaving any assets of his wife unadministered, the statute directs that they shall pass to his executors or administrators, 'but shall be liable for her debts to her creditors in preference to the creditors of her husband.' 2 Rev. St. p. 75, § 29."

We see nothing in that case which supports the contention of the appellant.

In McCosker v. Golden, 1 Bradf. 64, it was held, viz.:

"The right of a husband to administer upon the estate of his deceased wife is a positive right, not dependent upon his interest in the estate. Whether it

was an original common-law right, quære. His right to administer did not originate from his right to the estate, but, on the other hand, he became entitled to the estate, because he had a right to administer; the statute of distributions never having deprived him of the interest in the residue of the estate, which, before the passage of that act, was enjoyed by all administrators, after paying the debts and deducting the partes rationabiles. The Revised Statutes have also expressly declared that the assets of the deceased wife, after the payment of debts, shall pass to the husband, or his personal representatives, even where some other person administers."

That case was followed in Vallance v. Bausch, 28 Barb. 633, and the effect of the statutes of 1848 and 1849 upon the rights of married women was considered, and it was held that where a married woman was the owner of personal property, and died leaving no children, but leaving her husband and her mother her surviving, the mother had no right to attend as her next of kin at the probate of the will, and file objections; she having no interest in, or right to, the goods, chattels, and credits whereof the testatrix died the owner, but that the same belonged, after due administration, to the husband, who offered the will for probate.

In Shumway v. Cooper, 16 Barb. 556, it was held, viz.:

"Where a married woman dies intestate, leaving no debts unpaid, her husband cannot be called upon to account, in respect to her personal property, by her next of kin; he being, by statute (2 Rev. St. [4th Ed.] p. 259, §§ 29, 30), entitled to administer upon her estate, and the assets, after the payment of debts, belonged to him absolutely."

In Barnes v. Underwood, 47 N. Y. 351, it was held, viz.:

"At common law the husband had the right of administration, and through administration he acquired the title to the personal property of his deceased wife, not reduced to possession during coverture, subject only to the payment of her debts. These rights were preserved by the Revised Statutes (2 Rev. St. p. 75, § 29; Id. p. 98, § 79), and have not been affected by the statutes of 1848 and 1849 in relation to married women. Those statutes gave the wife control of her separate estate, with power of testamentary disposition during her life; but, if she dies intestate, the rights of her husband, as her successor, are not affected, and he is not prevented from administration and consequent enjoyment of the property."

In Peck v. Vandermark, 33 Hun, 214, it appeared that the plaintiff entered into an antenuptial agreement with the testator, whereby he promised that, in case she married him, he would bequeath to her the use and profits of his entire property during her life, and that she should dispose of one-half of it as she should see fit in case she survived him. He failed to keep his agreement with her, and an action was brought against his representatives, and a recovery was held to be proper for the damages sustained by the plaintiff by reason of a breach of the contract. That case was affirmed (99 N. Y. 29, 1 N. E. 41), and in the course of the opinion delivered it was said that, as the agreement did not provide for the appointment of the plaintiff as executrix, she could receive her interest in the "personal property in case he had kept his promise only through regular administration of his estate." We see nothing in the opinion delivered in either court which warrants the position taken by the plaintiff in this case. In Johnston v. Spicer, 107 N. Y. 185, 13 N. E. 753, it appeared an action was brought to determine who was entitled to the surplus money arising upon a sale of real estate upon which

there was a mortgage; and it was held that, by force of the marriage settlement, the wife became the equitable owner of the real estate, and that a trust by implication arose in her favor, and that the heirs held the title as a naked trust for her, subject to her right to be vested with it on demand, and that upon her death without heirs her interests and rights reverted to the state, and it was equitably entitled to the surplus. We see nothing in that case which sustains the contention of the appellant. In Gorham v. Fillmore, 111 N. Y. 251, 18 N. E. 729, an antenuptial contract was the subject of consideration, and the principal question determined in that case related to what property was covered by the language used in the contract. The question involved in the case in hand did not arise in that case. The case of Cobb v. Hanford, 88 Hun, 21, 34 N. Y. Supp. 511, contains no principle which supports the contention of the appellant. The action related to real estate which had been conveyed to the wife, in consideration of which she agreed to make an irrevocable will devising the premises to the plaintiff. She executed such a will, and subsequently she made another will making a different disposition of her property, and the action was brought to declare the plaintiff the owner of the property; and it was held that the complaint stated a cause of action.

2. In Tompkins v. Rice, 55 Hun, 563, 9 N. Y. Supp. 21, it appeared that the husband was entitled, as the successor of his wife, to the bond and mortgage which produced the money that was the subject of controversy, and, having reduced them to possession, he made an assignment of them before he was appointed administrator. Subsequently he was appointed administrator, and the question arose between him and his assignee as to the money arising upon the foreclosure of the mortgage, and near the close of the opinion it was said:

"There is nothing in the case to show that the rights of any person, other than the appellant and respondent, are involved; hence it is unnecessary to consider the question whether such transfer was valid as to the creditors, if any, of Mrs. Tompkins. The question here is between the appellant and respondent as to their rights under the allegations of the defendant's answer."

We see nothing in that case which would warrant us in concluding that it is an authority to support the claim that the plaintiff in this case can maintain an action against the defendant bank.

The foregoing views, as well as those expressed in the opinion of the learned judge at special term, lead us to the conclusion that the judgment below should be sustained.

Judgment affirmed, with costs. All concur.