## SMITH *vs.* COLVIN.

It was not the intention of the legislature, by the act of April 7, 1848, for the more effectual protection of the property of married women, to interfere with marital rights then existing; and the act does not operate, retrospectively, upon such rights.

Accordingly, *held*, that a conveyance of her real estate, executed by a married woman, in 1849, did not divest the right of her husband as tenant by the curtesy, or pass any estate to the grantee.

The legal estate of a judgment debtor is not divested by a sale of the land upon execution, and the expiration of the time for redemption, unless the sale has been *consummated*, and the title vested in the purchaser, by *a deed from the sheriff*.

Until a conveyance is executed by the sheriff, the title of a purchaser upon a sale on execution is inchoate. By the simple act of purchase he acquires no *legal estate* in the land, but a *right* to an estate, which may be perfected by conveyance. The legal estate remains in the debtor, who, prior to the sheriff's deed, is entitled to the possession, and to the rents and profits.

Before conveyance the purchaser cannot maintain ejectment to obtain possession; and *pari ratione* he cannot defend a possession obtained against the consent of the debtor.

Smith v. Colvin.

THIS was an action of ejectment, tried at the Jefferson circuit in April, 1851, before Mr. Justice Pratt. It was tried upon the pleadings and upon a written stipulation of facts, as follows:

"The plaintiff married Lucy Fillmore in the month of December, 1832, and cohabited with her until 1848, when they separated, leaving the said Lucy in possession of the premises contained in the plaintiff's complaint. During such cohabitation the said plaintiff had *two children born alive* of the said Lucy, and one of whom is now living with the said Lucy, a son about fourteen years of age; the other is dead. In 1845, the said Lucy became seised and the owner of the farm and premises in the plaintiff's complaint in this action contained, as an heir at law of her father, who died at or before that time. In the spring of 1849, the defendant entered upon the said premises, first as tenant of the said Lucy, and on the 17th of May, 1849, purchased of her the said premises by a warranty deed, and is now in the actual possession of said premises, and was at the commencement of this suit, claiming them as owner. After the plaintiff left the said Lucy, and previous to the 1st of October, 1849, he confessed three judgments to different persons, which were duly docketed in the clerk's office of Jefferson county. Executions were issued to the sheriff of said county on said judgments, and on the 17th of November, 1849, all the right, title and interest of the plaintiff in the premises were sold by said sheriff, and bid off by the defendant for the sum of $208, the amount of the said executions. That the plaintiff did not redeem the premises; and on the 14th day of February, 1851, he confessed a judgment for $26, to William C. Thompson, which was on the same day duly docketed in the Jefferson county clerk's office, and by Thompson duly assigned to Thomas C. Chittenden, the 2d, and on the 15th of February, and before the end of the fifteen months from said sale, Chittenden presented to the sheriff the papers required by law to redeem the premises as judgment creditor, and paid the amount of the defendant's bid with interest thereon, to said sheriff, *but the deed from the sheriff has not as yet been executed;* no other redemption of said premises has taken place."

Smith *v.* Colvin.

The action was commenced September 1, 1849. Judgment was rendered for the plaintiff, for the recovery of the possession of the premises; from which the defendant appealed.

*Chas. D. Wright,* for the defendant. I. The plaintiff under the statement of facts in this case, had at the time of the trial of this cause, no legal interest in the premises described in the complaint. (*Laws of* 1848, *p.* 307, *ch.* 200, § 2; *Laws of* 1849, *p.* 528, *ch.* 375, § 1; 2 *R. S. 3d ed. p.* 468, § 53; *p.* 470, § 63; *p.* 404, § 32. *Schermerhorn* v. *Miller,* 2 *Cowen,* 439.) II. Since the commencement of this action, and before the trial, the plaintiff's right and title expired. At the expiration of fifteen months from the sale of real estate on execution, the interest of the judgment debtor is divested, and the purchaser, or redeeming creditor, has the legal estate. The sheriff's deed is only evidence of the sale; the estate passes by the sale. (2 *R. S.* 2d *ed. p.* 404, § 32; *p.* 4.., .., .., 470, § 63.)

*W. C. Thompson,* for the plaintiff. 1. The law of the marriage contract, existing when the marriage took place between the plaintiff and Lucy Fillmore, December, 1832, transferred as by purchase to the plaintiff the personal property of Lucy Fillmore in possession, or which during coverture should become hers by gift, devise or inheritance, and all her choses in action reduced to his possession, together with right of possession and of administration for his own benefit on her death, of all her chattels real and of all her choses in action, (resting in action merely,) together with an estate for life if he should have a child or children born alive of her, in all her real estate. (2 *Kent,* 130.) 2. These were all certain, fixed, and vested rights in the plaintiff, which only could be divested by his own act, or by operation of law. 3. The act of 7th April, 1848, could not interfere with or divest an estate for life in the plaintiff, existing at the time of its passage. The wife of the plaintiff, during his life, had no interest in the lands in question, upon which the statute could operate. (*Sess. Laws* 1848. 3 *Barb. S. C. Rep.* 621.) 4. During coverture the plaintiff had children born alive of the

Smith *v.* Colvin.

said Lucy; which made him tenant by the curtesy of the lands in question from the birth of the children. 5. If the premises in question have been sold on execution, then until *sale completed* by the sheriff's deed the title of the plaintiff is not divested, but remains in him; until then the sale is an incomplete sale, an inchoate proceeding which may or may not ever be perfected; and until perfected does not become a title. (2 *R. S.* 2*d ed.* 296, § 62.)

*By the Court*, HUBBARD, J. The precise question to be determined is, whether the plaintiff at the time of the trial had any legal estate in the premises, sufficient to sustain ejectment. The defendant's first objection is founded upon the statute for the more effectual protection of the rights of married women. (*Sess. Laws*, 1848, *p.* 307, § 2. *Laws of* 1849, *p.* 528, § 3.)

It cannot be disputed that in 1845, at the time the premises descended to the plaintiff's wife, Lucy, (whose maiden name was Fillmore,) the plaintiff acquired a freehold estate, *jure uxoris.* (2 *Kent's Com.* 130, 3*d ed.*) A husband's estate in the lands of his wife, held in her own right, is denominated a freehold, because of its certain continuance during coverture, and during his life, after her decease, provided he is tenant by the curtesy. As a necessary incident, the husband becomes entitled to the possession, and to the rents and profits, commensurate with his estate, and if ousted may recover the same, in his own name. These marital rights were well settled by the common law, but the defendant's counsel contends that the provisions of the statutes of 1848 and 1849, referred to, abrogated the husband's estate, restoring, so to speak, to the wife the fee absolute, with full control and power of alienation, irrespective of the husband. It appears that in this case the wife did act upon this view of the law, by leasing and subsequently conveying the premises to the defendant. But we are clearly of the opinion, that neither the statute nor the conveyance of the wife, affected in the least the estate of the plaintiff, or his right to prosecute this action. That estate was acquired prior to the enactment of the law : it became vested under the marriage contract, and it is not within

legislative authority to divest it. Besides, the legislature have not undertaken any interference. There is nothing in the letter or spirit of the act, by which any intention can be discovered to interfere, with marital rights acquired prior to its passage. And it is a familiar rule of statutory construction, that unless the clear letter of the law requires it, statutes are to be construed as operating *prospectively* and not *retrospectively*. Such is the presumed intent of the legislature, and especially so, when by retroaction *vested rights* are to be affected. (*Smith's Com.* 679.) In *Dash* v. *Van Kleeck*, (7 *John.* 477,) Chief Justice Kent, at page 485, says, "the very essence of a new law is a rule for future cases." (*Snyder* v. *Snyder*, 3 *Barb. S. C. Rep.* 621. *Butler* v. *Palmer*, 1 *Hill.* 334.) We think, therefore, that the act of 1848 was not intended, and cannot be construed, to affect in any respect the marital rights of the husband in the property of his wife, vested before its passage.

It follows that the conveyance of the plaintiff's wife to the defendant conveyed no estate affecting the plaintiff's rights. The wife had no present estate which she could legally convey; the deed is therefore wholly inoperative; a nullity as respects the plaintiff.

The second objection to the recovery is, that the plaintiff's legal estate became divested by the execution sale, and the expiration of the time of redemption, before the trial. This ground is untenable, because the sale had not been *consummated by sheriff's conveyance*. Until conveyance, the title of the purchaser is *inchoate ;* by the simple act of purchase he acquires no legal estate *in* the land, but a right *to* an estate, which may be perfected by conveyance ; the legal estate remains in the debtor, who prior to the sheriff's deed, is entitled to the possession and to the rents and profits. This is apparent from § 64, 2 R. S. p. 470, 3d ed. If no redemption is made, the sheriff is required to *complete* the sale by conveyance, "which conveyance shall be valid and effectual to *convey* all the right, title and interest which was sold by such officer." (4 *Kent's Com.* 431, 3*d ed.*) All redemptions must be within fifteen months of the time of sale, for the officer is then to execute

a deed to the person entitled, and the *title so acquired* becomes absolute in law. The deed when executed will be good by relation and cover the intervening period from the sale. The title does not pass by filing the sheriff's certificate, which only operates as a lien by way of action, to protect the purchaser against intervening claims, except the right of redemption. Nor does the estate of the debtor become vested in the purchaser by mere lapse of the time of redemption, but only, as we think, by the sheriff's conveyance under the statute. ( *Vaughn* v. *Ely,* 4 *Barb.* 159.) This *mode* of transferring title to real estate, is in derogation of law, which requires the owner's consent, and the statute should therefore be construed strictly, or in other words, title should not be regarded as divested or transferred by the sale alone, unless such is the plain import of the statute.

Before conveyance, the purchaser could not maintain ejectment to obtain possession; and *pari ratione,* he cannot defend a possession obtained against the consent of the debtor.

From these views it follows that the plaintiff, at the time of the trial, had both the legal estate and the right of possession. The judgment must therefore be affirmed.

[ONONDAGA GENERAL TERM, November 3, 1853. *Gridley, W. F. Allen* and *Hubbard,* Justices.]