## IN THE MATTER OF FRANCES M. WINNE, AN INFANT.

(SPECIAL TERM, NIAGARA COUNTY, MAY, 1869.)

The husband's common law estate of tenancy by the curtesy, is abolished in this State, in all the real property of the wife, affected by the married women's acts of 1848 and 1849.

FRANCES M. WINNE, an infant, applied to the court by her next friend for leave to sell certain real estate, descended to her as heir of her mother, now deceased.

The title of the mother accrued after the acts of 1848 and 1849, for the more effectual protection of the property of married women. The father of the infant claimed an interest in the real estate of his deceased wife, as tenant by the curtesy, and offered to join in a conveyance of such interest in case the court ordered a sale of the infant's interest therein, on being paid the estimated value of his life estate. The referee reported the value of the premises, and the amount of the father's interest therein as tenant by the curtesy; and the question arose, whether the proceeds of a sale, if ordered, would

In the matter of Frances M. Winne.

belong exclusively to the infant, or whether the father's claim was valid as tenant by the curtesy.

*Sylvester Parsons*, attorney for the petitioner.

LAMONT, J.' There never has been a time in the history of the common law, when the husband's tenancy by the curtesy began upon the wife's decease, or was affected by the laws of descent. Such tenancy is an estate of freehold in the husband, which cannot arise at or after the death of the wife, but must vest in him during her life-time, and during the actual continuance of the marriage. Whatever interest in the wife's inheritance accrues to others upon her death, cannot, by the nature of the case, be a tenancy by the curtesy, as such estate is defined by the common law. The heir can only take by the death of the ancestor, but the husband must take his tenancy by the curtesy while the wife still lives. At common law, by virtue of the marriage alone, the husband became vested with the right of possession, and the beneficial use, during the joint lives of himself and wife, of her estates of inheritance, of which she was seized during coverture; but such estate in him acquired by the marriage, was not a tenancy by the curtesy. To enable the latter estate to exist, there must have been not only a marriage, and seizin of the wife, but the birth of living issue, capable of inheriting as heir to the mother, whereupon instantaneously a freehold estate in the realty of which she was, or during the marriage might become seized, passed to the husband for the whole period of his life; and this freehold co-existed with his life, unaffected by the circumstance of her death, and constituted the anomalous estate denominated tenancy by the curtesy. As this tenancy was not terminated by the wife's death, nor affected by any law of descent, so it had nothing in common with the laws of succession of the wife's personal property.

From the time of 31 Edward III, the husband has been entitled, by statutory provisions, to administer the deceased

wife's personal effects. Some authorities have derived his title to her personal estate, after her decease, from such right to the administration, while others assert that such title in him existed at common law. (*McCosker* v. *Golden*, 1 Bradf., 64; *Westervelt* v. *Gregg*, 12 N. Y. Rep., 206; *Ransom* v. *Nichols*, 22 id., 112; Toller on Executors, 83–4.) Blackstone asserts the common law right of the husband, not only to administer, but also to enjoy, exclusively, the effects of his deceased wife (2 Black., 515); and the Court of Appeals, in an exhaustive opinion, written by the late Judge WRIGHT, have demonstrated, that as to the personal estate of the deceased wife, the husband was, before the statute of 1848, entitled to the choses in action, and other personal estate of the wife, after her death, because the interest was *vested* in him, by virtue of the marriage, *before* her death. (*Ryder* v. *Hulse*, 24 N. Y. Rep., 372.) The acts of 1848–9 abolished such pre-existing interest of the husband, as to property coming to her during the coverture, after the enactment of those statutes; and such personal property of the wife, left undisposed of by her, at her death, he takes, by the statutes giving him preference, in the administration, over any other person. (2 R. S., 74, § 27, but now materially amended, chap. 782, Laws of 1867, § 6; 2 R. S., 75, § 29.) But his exclusive right to her effects, after paying her debts, in course of administration, heretofore secured (2 R. S., 75, § 30, and p. 98, § 79), has been taken away by the statute of 1867. The above thirtieth section of the Revised Statutes has been repealed. That section provided that "if letters of administration on the estate of a married woman, shall be granted to any other person than her husband, by reason of his neglect, refusal, or incompetency to take the same, such administrator shall account for, and pay over, the assets remaining in his hands, after the payment of debts, to such husband, or his personal representatives." The Laws of 1867 effected another important change in the husband's rights of succession to the wife's personal estate.

By the above § 79 (Revised Statutes), it was provided that

In the matter of Frances M. Winne.

"the preceding provisions respecting the distribution of estates *shall not apply* to the personal estates of married women ; but their husbands may demand, recover and enjoy the same, as they are entitled by the rules of the common law." The act of 1867 amended that section, so as to read as follows : The preceding provisions respecting the distribution of estates *shall apply* to the personal estates of married women dying, *leaving descendants them surviving ;* and the husband of any such deceased married woman shall be entitled to the same distributive share in the personal estate of his wife to which a widow is entitled in the personal estate of her husband by the provisions of this chapter, and *no more.* (Laws of 1867, chap. 782, § 11.)

It is important to bear in mind that express statutory enactments have determined the succession of the wife's personal effects, because, as will be hereafter observed, an argument had been, before the change of 1867, built upon that circumstance favoring the husband's right to hold as tenant by the curtesy in her real estate, by some supposed analogy between the cases, which however, rest in principles entirely distinct and now made conspicuously so by the legislation of 1867.

The act for the more effectual protection of the property of married women (Laws of 1848, chap. 200, p. 307), and the act to amend the same (Laws of 1849, chap. 375, p. 528), wrought a radical change in the common law.

In respect to all property subsequently acquired by married women, or by single women before their marriage, these statutes have industriously excluded their husbands from every right and title therein, or to the possession, control, use and enjoyment thereof, and of its rents, issues and profits, which had been conferred by the common law.

A married woman may now take real and personal property, by inheritance, gift, grant, devise and bequest, from any person other than her husband, and hold the same to her sole and separate use, and convey.and devise it, or any interest or estate therein, and the rents, issues and profits thereof, in the same manner and with the like effect as if she was unmar-

ried, and the same is not subject to the disposal of her husband nor liable for his debts; and property real and personal, owned by a woman at the time of her marriage, and the rents, issues and profits thereof, are no longer subject to the husband's disposal after marriage, nor liable for his debts, but continue her sole and separate property as if she were a single female.

The common law gave the husband, by the fact of marriage, and during coverture, the usufruct of all the real property of the wife; that is to say, of all the lands, tenements and hereditaments which she may have had in fee simple, fee tail or for life (Reeves' Domestic Relations, 27), which was a freehold estate in the view of the law, being an estate for life, since it might, by possibility, last during his life, and having no certain determinate period.    (Id.; 4 Kent, 26; 1 R. S., 722, § 5; Greenleaf's Cruise, title 1, § 13.)

It is not questioned but that this freehold of the husband in his wife's real estate is abrogated by the statutes of 1848 and 1849; for as it never could continue after the wife's death, but was vested in the husband only during coverture, its existence is totally inconsistent with the express provisions of those statutes.    That freehold estate of the husband is for the future abolished in this State, together with the absolute title which, by the common law, the husband acquired by marriage to all the wife's personal property in possession. (2 Black., 433.)

It remains to be seen whether that other estate denominated a tenancy by the curtesy can longer exist in favor of the husband in the real property of the wife, to which she may have become entitled since the passage of the acts in question.

Tenancy by the curtesy is an estate for life created by the act of the law (4 Kent, 27).    The tenant for life has a right to the possession and annual produce of the land, during the continuance of his estate, without having the *proprietas*, that is, the absolute property and inheritance of the land itself, which is vested in some other person.    (Greenleaf's Cruise, title 3, chap. 1, § 1.)

If this estate of tenancy by the curtesy becomes *vested in*

*the husband during the wife's life, as the essential condition of its existence,* then it is too plain for argument, that the enactments of 1848 and 1849 have annihilated it for the future, because those statutes, in the language of the Court of Appeals, divest the title of the husband *"jure mariti"* during coverture, and enable the wife to take the absolute title as though she were unmarried. (*Knapp* v. *Smith,* 27 N. Y. R., 279.)

In treating of curtesy, the authorities usually say that four things are necessary to make this estate complete, to wit · Marriage, seizin of the wife, issue and death of the wife (Bouvier's Law Dictionary, *sub nom estate by the curtesy.*) But the fourth requisite always receives the material qualification that the husband's estate is *initiate* on issue had, and *consum mate* on the death of the wife. (4 Kent, 29 ; Co. Litt., 30 a 2 Blackstone, 127.)

Now as to the marriage and seizin, little need be said ; but respecting the issue and death of the wife, these deserve care ful examination.

The issue must be born alive and during the marriage, and capable of inheriting as heir to the mother ; and the issue must be born during the life of the mother, for if the mother dies in labor, and the Cæsarean operation is performed, the husband in this case shall not be tenant by the curtesy, because at the instant of the mother's death he was clearly not entitled, as having had no issue born, but the land descended to the child while he was yet in his mother's womb, and the estate being once so vested, shall not afterwards be taken from him. (2 Black., 127 ; Co. Litt., 29 *b* ; *Marsellis* v. *Thalhimer,* 2 Paige, 42 ; Greenleaf's Cruise, title 5, chap. 1, § 17.)

The law writers and adjudged cases all concur that tenancy by the curtesy *must vest* in the husband *before* the death of the wife and *during coverture,* and when so vested the husband becomes at once entitled to and seized of this species of free- nold, for his own life ; that is, while his wife is living he is then already entitled to the possession and annual produce of

the wife's real estate, by a right and title which continue for and during his own life. Before the wife dies, the husband has already, in her lifetime, acquired this estate, which is his freehold, subject to his disposal, and liable to sale on execution for his debts.

The estate is called *initiate* during the wife's life, and *consummate* upon her death; but when *initiate* it is his freehold, and when consummate it is nothing more.

If it can be demonstrated that the husband, at common law, took some new estate in the wife's lands by her death, to which he was not entitled during her life, then it must be conceded that such new estate thus acquired will remain unaffected by the statutes of 1848 and 1849.

But if upon her death, he took, by the common law, no new estate in her inheritance, then the conclusion would seem incontrovertible, that whatever interest he may have acquired during her lifetime is now abolished by the provisions of those statutes, and this presents a problem to be solved by authority.

Forty-five years ago, the Supreme Court of this State decided that upon execution against the husband, who was tenant by the curtesy *initiate*, a sale of his interest in the wife's real estate (the wife then living) carried to the purchaser the husband's whole life estate as tenant by the curtesy; and it is remarked in *Sleight* v. *Read* (18 Barb., 161), that such is now considered the settled law, having never since been questioned. (*Schermerhorn and Clute* v. *Miller and wife*, 2 Cow., 439.) In *Jackson* v. *Mancius* (2 Wend., 357), the tenant by the curtesy *initiate* during the lifetime of the wife, and two years before her death, conveyed the premises away by deed; and it was held that such conveyance carried to the grantee the husband's entire interest as tenant by the curtesy for and during his life, which was a material point for decision.

In *Van Duzer* v. *Van Duzer* (6 Paige, 366), it was held that a sale, upon execution against the husband, of his interest in the real estate of his wife, *then living*, such interest being that of tenant by the curtesy *initiate* only, would carry to the purchaser the husband's interest or freehold *during his life*, and

the chancellor expressed regret that he was not able to find any principle either of law or of equity which would authorize the Court of Chancery to interfere with the husband's legal estate as tenant by the curtesy initiate, in his wife's real property so as to place it beyond his reach and the reach of his creditors (p. 367–370).

In *Ellsworth* v. *Cook* (8 Paige, 643), the same doctrine is again affirmed and the chancellor regarded tenancy by the curtesy *initiate* while the wife was living as a vested estate in the husband and a judgment recovered against the hus-·band as a lien upon it to the value of his life estate (p. 646, 647).

In *Riker* v. *Darke* (4 Edwards, Ch. Rep., 668), it was held that the grantee of a tenant by the curtesy *initiate* has a sufficient estate in lands upon which to base a partition suit.

Coke says, if after issue the husband maketh a feoffment in fee, and the wife dieth, the feoffee shall hold it during the life of the husband to the exclusion of the heirs, so that the husband might dispose of his life estate by the curtesy while the wife was living, which is the same law as held in *Jackson* v. *Mancius, supra* (Co. Litt.,. 30 *a.*) ; and Coke puts a case where the wife's right and title expire with her life so that she had nothing by way of interest to leave to the husband or to the heir at her death, and yet the husband's tenancy by the curtesy continued, thus : " If a woman tenant in tail general taketh a husband and hath issue, which issue dieth, yet the hu band shall be tenant by the curtesy, because he was entitled to be tenant *per legem Angliæ* (*i. e.*, by the curtesy) before the estate tail was spent." (Co. Litt.,· 30 *a.*)   It i.; to be observed that the estate in tail became spent or ended by the death of the wife, she leaving no issue to continue the inheritance, and the husband's title as tenant by the curtesy became vested before her death, for her entire interest terminated with 'her life.

Cruise says, the estate by the curtesy was not derived merely out of the estate of the wife but was given to the· husband by the *privilege and benefit of the law ;* for as soon

as the husband had issue, his title became initiate, and could not afterward be defeated by the death of the issue which being the act of God, ought not to turn to his prejudice. (Greenleaf's Cruise, title 5, ch. 2, § 8.; citing Paine's case, 8 Rep., 34.)

This privilege and benefit of the law attach to the estate by the curtesy when the estate commences upon the birth of issue during the wife's life-time; for the law could give no privilege or benefit to the husband in her estate after her whole interest was ended, the entailed estate ceasing with her life for want of proper heirs to continue the inheritance. Blackstone says, as soon as any child was born, the father began to have a *permanent interest* in the lands; he became one of the *pares curtis*, did homage to the lord, and was called tenant by the curtesy *initiate;* and *this estate being once vested in him by the birth of the child*, was not suffered to determine by the subsequent death or coming of age of the infant. (2 Black., 127.)

It is incontrovertible that all the right, title and interest of the husband called tenancy by the curtesy *initiate*, which must *ex necessitate* accrue to the husband during the wife's life, must now be abolished, and swept away by existing statutes, because so much at least of the husband's estate is absolutely inconsistent with the express language of the legislature; and this point was expressly adjudicated in *Thurber* v. *Townsend* (22 N. Y. R., 517).

Although we read of this tenancy becoming *consummate* upon the wife's decease, I have not been able to discover that it is in any respect, different in quality or quantity, from the same estate when called *initiate;* when *initiate*, the husband has a life estate in the land which he may convey to others (*Jackson* v. *Mancius, Riker* v. *Darke, supra*), and which may be sold on execution against him (*Schemerhorn* v. *Miller, Van Duzer* v. *Van Duzer, Ellsworth* v. *Cook, supra*); and the purchaser in either case, during the wife's life-time, acquires the entire right of the husband during his life. As before stated the husband, by the marriage alone, became entitled at

In the matter of Frances M. Winne.

common law to a freehold in the wife's lands during the marriage; that is, for the joint lives of husband and wife.

Tenancy by the curtesy beginning with the birth of issue, is another freehold of the husband in the same lands; a freehold for his own life, which is a superior freehold to the other. These two estates of freehold must co-exist in the husband, and run together during their joint lives, it remaining a contingency during that period, whether both will cease together, or whether curtesy will outlast the other freehold interest. They will both cease together in case the husband dies before the wife; but if the husband survives her, then the estate by the curtesy being already vested in the husband for his whole life, is separated in point of duration from his other freehold, and exists separate, and distinct from it. It is thus *consummate.* It might also with propriety be called *consummate* after the death of the wife for the further reason, that during the wife's life-time it might, under certain circumstances, be defeated by her attaint of felony (Co. Litt., 40 *a*), or by her being found an idiot. (Id. 30 *b*.)

Cruise, in his comprehensive digest of the laws of real property, devotes two whole chapters to the discussion of tenancy by the curtesy, but does not attempt to show that curtesy *consummate* is a different estate from curtesy *initiate.* He dismisses this whole subject in two and a half lines with the remark, that, " the fourth and last circumstance required to give a title to curtesy is the death of the wife, by which the estate of the husband becomes *consummate.* (Title 5, chap. 1, § 24.) Nor does Coke or Blackstone, or Kent, add to our information upon this interesting point of inquiry. They all agree, however, that the estate is vested in the husband before the death of the wife, which is the important inquiry before us. We have seen that by the ancient laws, as well as by the judicial decisions in this State, curtesy *initiate* and curtesy *consummate* are but the same estate. It is liable to execution and sale to the same extent before as after the death of the wife. Chancellor WALWORTH treats tenancy by the curtesy, in case the husband survives the wife, as the *continuance* of his estate

as tenant by the curtesy *initiate*. *Ellsworth* v. *Cook* (8 Paige, 645), and the judicial determinations of our courts, already referred to, make it certain that the one is but the *continuation* of the other, and that the whole estate vests in the husband during the wife's life-time as fully and absolutely as it can ever be enjoyed by him. Coke says: " and it is adjudged in 29 E. 3, that the tenant by the curtesy cannot claim by a devise and waive the state of his tenancy by the curtesy, because, saith the book, the *freehold commenced in him* before the devise *for term of his life*." (Co. Litt., 30 *a*.)

And again : " A woman taketh husband, and hath issue ; lands descend to the wife ; the husband enters, and after the wife is found an idiot by office, the lands shall be seized by the king for the *title of the tenancy by the curtesy* and of the king, begin at one instant, and the title of the king shall be preferred." (Co. Litt., 30 *b*.)

Now, the *instant* here mentioned is the very moment the lands descend to the wife ; by office found the king's title relates to that time, and is preferred over the husband's by virtue of the royal prerogative. The citation is important to show that the *husband's title*, as tenant by the curtesy, began, accrued, or vested before the death of the wife.

Under our present statutes this estate cannot have any beginning ; there can now be no tenancy by the curtesy *initiate ;* the wife holds the entirety of her real estate as long as she lives, whether she have issue or not, as if she were unmarried. It is her sole property ; her separate estate ; not subject to the disposal of her husband nor liable for his debts.

Since the statutes of 1848 and 1849, conflicting opinions have been entertained concerning their effect upon the husband's interest as tenant by the curtesy.

The difficulty, as I apprehend, grows out of the erroneous supposition that this interest, denominated *initiate* at one period and *consummate* at another, is not at all times one and the same estate.

The authorities already cited refute such supposition, and furnish a correct exposition of the real qualities of this species

of tenancy as it had long been settled before these acts became laws.

In *Hurd* v. *Cass* (9 Barb., 366), decided very soon after these statutes took effect, Mr. Justice MASON, held at Special Term, that such estate still subsists in the surviving husband.

The reported opinion of the learned justice appears to be founded upon the idea that this tenancy is an estate which, upon the principles of the common law, the husband *acquired in the wife's lands at her death* (p. 368) ; and he further proceeds to say, that, " at common law, the husband, upon the marriage, became seized of a freehold estate "*jure uxoris* " in the wife's lands, and took the rents and profits thereof, during their joint lives.   This was such an interest as the husband might transfer, or as was liable to be sold for his debts, and it was probably *this interest* of the husband in the wife's land to which this clause of the statute (*i. e.* the clause providing that the wife's property shall not be subject to the disposal of her husband nor be liable for his debts) has reference ; and not to an *interest which alone vests* and becomes consummate, on the *death of the wife*, where there is a child born alive of the marriage."   The error of the learned justice is here manifest ; for it is well settled law that the husband might transfer not only the interest mentioned by him, but the tenancy by the curtesy *initiate*, and also that this *initiate* tenancy by the curtesy was liable to be sold on execution for his debts while the wife was living, as fully appears by the cases heretofore cited.   When the learned justice says that tenancy by the curtesy *alone vests* on the death of the wife, he is unsupported by authority.   The authorities are quite the reverse. He is equally in error when he supposes that curtesy ever accrued by any law of descent. (p. 368.) Neither do I perceive that any light is thrown upon the subject by discussing, as he has done, the further question when equity would, and when it would not, allow the husband to be considered or treated as a tenant by the curtesy in an equitable estate of the wife, or in an estate devised to the wife for her separate use ; for this is but an attempt to solve one difficulty by start-

ing a greater one. Where the intent of the devise or settlement is clear, manifesting a design to give the estate to the wife for her separate and exclusive use, the Court of Chancery will bar the husband of curtesy. (4 Kent, 31.)

The question in chancery, as Justice Story observes, involves some nice distinctions. (Story Eq. Jur., §§ 1381, 1382, 1383, 1384.)

There is no doubt but that the estates of married women, held under the recent statutes, are strictly *legal estates* (*Colvin* v. *Currier*, 22 Barb., 371); and the nature of the husband's interest therein (if any), as tenant by the curtesy is to be determined by legal principles. Now, I cannot conceive how the question of the husband's right to a tenancy by the curtesy in the legal estate of the wife can be elucidated by the consideration of the more abstruse question, that concerns the husband's right to be allowed the privileges of such a tenant in an equitable estate of the wife in a settlement upon her, or in a devise to her; for in the latter class of cases, chancery endeavors to approximate toward the principles of the common law; and in equity, the question still is, whether the wife has an equitable estate of inheritance, and what was the design touching the exclusion of the husband. The cases agree, that a settlement upon the wife, or a devise to her, in the terms employed by the statutes of 1848 and 1849, creating a separate estate in her, sedulously excluding the husband and his creditors, would deprive him of curtesy. But how far equity would go, or how short equity would come, in this respect, matters not. Equity never pretended to invent a new kind of curtesy, a sort of estate having no moral foundation. (Greenleaf's Cruise, title 5, chap. 1, § 3.) Equity, when it allowed curtesy, first likened the case to the common law estate, turning for this purpose the equitable into the *similitude* of a legal inheritance.

In *Clark* v. *Clark* (24 Barb., 581), at Special Term, Mr. Justice Marvin expressed his concurrence in the opinion of Justice Mason, and upon the principles of the authorities cited by him. He entered into no discussion or argument,

respecting the time of the vesting of this estate by the curtesy in the husband; and it is, I think, demonstrated by numerous authorities, that Mr. Justice MASON labored under a material mistake upon the hinging point of the question.

In *Billings* v. *Baker* (28 Barb., 343), at Special, and again at General Term, it was maintained that tenancy by the curtesy is abolished, in opinions of great research and force by Mr. Justice POTTER.

There are other cases reported, in which the judges have expressed conflicting opinions upon the question.

In *Colvin* v. *Currier* (22 Barb., 371), at General Term in the seventh district, the opinion was expressed, that the acts of 1848 and 1849 were statutes passed in furtherance of the policy of relaxing the strict rules of the common law in respect to married women. Those acts, say the court, repeal the common law rules, giving the husband a right to the personal property of the wife, and a freehold interest in her estate of inheritance, and subjecting the same to the payment of his debts. These acts were designed to take away the marital rights of the husband in respect to such property of the wife (p. 382).

Afterward however, in *Jaycox* v. *Collins* (26 How., 496), contrary views were expressed at the General Term, in the same district, and that learned court supposed that the acts of 1848-9, were not designed to take away the marital rights of the husband, and that tenancy by the curtesy has survived these acts.

In *Vallance* v. *Bausch* (28 Barb., 633), at General Term, first district, no question arose in respect to tenancy by the curtesy. The case was an appeal from the surrogate upon the probate of a will of personal property. Afterward, in *Burke* v. *Valentine* (52 Barb., 412, less fully reported in 5 Abbott, N. S., 164), the decision below did not raise the question of the present existence of the tenancy by the curtesy. The wife, in that case, never had any seizin or right to the possession of the realty; which would be fatal to the husband's claim to be a tenant by the curtesy, both before and

since the acts of 1848–9, if such tenancy still exists in our law. The Special Term decision was affirmed. The observations at General Term about curtesy were but *dicta*. And such was the case in *Lansing* v. *Gulick* (26 How., 250); the father having conveyed away his right, whatever that may have been, before the suit was commenced, so that he was turned out of court for want of interest. His complaint must have been dismissed, whether he had been tenant by the curtesy or not. In *Shumway* v. *Cooper* (16 Barb., 556), nothing is said upon the subject of this species of estate. The same remark will apply to *Blood* v. *Humphrey* (17 Barb., 660). In *Smith* v. *Colvin* (17 Barb., 157), the husband's rights accrued before 1848.

In *Beamish* v. *Hoyt* (2 Robertson, 307), the Superior Court of New York city was of opinion that this tenancy still exists. In *Benedict* v. *Seymour* (11 How., 176), the Supreme Court in the first district thought it was abolished.

In the Court of Appeals, it was held in *Ransom* v. *Nichols* (22 N. Y. R., 110), that the husband surviving the wife, was entitled by the provisions of the Revised Statutes, or at common law, to the choses in action of his deceased wife, and that payment to him of a promissory note, held by her at her death, was a valid defence to the debtor, although some third party had obtained letters of administration on her estate. Nothing is said in the case about curtesy, nor does it appear that there had been issue of the marriage. In *Thurber* v. *Townsend* (22 N. Y. Rep., 517), the wife brought ejectment for land descended to her from her father in 1854. Her husband was living, and there was issue of the marriage also living. The defendants held the premises under a lease from the husband. Here was a case of tenancy by the curtesy, initiate, as such tenancy has always existed at the common law, and still exists, unless the acts of 1848–9 have abolished it. The defendants asked the court to charge the jury, that the husband by his marriage, and the birth of a child, acquired an estate by the curtesy in the land of his wife, which could not be defeated by the legislature. The

court charged to the contrary, and the defendants took an exception.

There was another question in the case not material to be considered; but upon the point of the charge and exception the Court of Appeals, without a dissenting voice, held that no error was committed (p. 520). This case is directly in point, that tenancy by the courtesy initiate no longer exists.

In *Knapp* v. *Smith* (27 N. Y. Rep., 277), DENIO, Ch. J., delivering the opinion of the court, says (p. 279), that "at common law as to real property, the husband, where no trust was created, had an estate during the coverture, and during his life, if there was issue of the marriage." It is not suggested that the husband's life estate needs any other support than the marriage, the birth of issue, and the seizin of the wife ; her death is not mentioned as an element in the husband's freehold.

The opinions which favor the existence of the husband's tenancy by the curtesy with hardly an exception, since the case of *Hurd* v. *Cass*, adopt the reasoning in that case, and then apply to real estate by analogy the rules that dispose of the wife's personalty after her death.

That analogy is a fallacy, whether her undisposed of personalty goes to the surviving husband by force of statutory provisions or by the common law, about which different views have been entertained. (*Westervelt* v. *Gregg*, 12 N. Y. Rep., 202; *Ransom* v. *Nichols*, 22 N. Y. Rep., 110; *Ryder* v. *Hulse*, 24 N. Y. Rep., 372.) By whichever right he took he formerly took the whole. If then, he takes by the same right in the realty he would take all the real estate left by the wife. I am not aware that a case ever was known where the laws of succession devolved upon heir or kin a temporary interest in either real or personal property ; a mere life estate with remainder to others ; nor do I think such an instance can be found in legal history. Such partial estates may be carved out of property by contract or conveyance, or by last will and testament, but the law itself when it gave to heirs or next of kin, gave all.

No change in the statute of distributions or of any statute respecting personal property, would affect the laws of descent of real estate. The act of 1867, materially changes the husband's interest in the deceased wife's personalty, and if that act had been somewhat older; if it had been originally incorporated into the Revised Statutes, no one would probably have thought of this supposed analogy between the rules that regulate the descent of real and the distribution of personal property left by married women at their death.

By the act of 1867, the absolute right of the husband to the deceased wife's personalty, whether that right formerly existed at common law, or was conferred by statute, has been abrogated, and he is now only entitled to claim his distributive share through due administration in like manner as the widow and next of kin.

By our statute of descents the whole interest of the wife in her estates of inheritance as such interest happens to subsist at the time of her death, then passes to her heirs at law. (1 Rev. St., 751, &c.) It was only the estate which the husband had acquired by the birth of issue of the marriage, in her lifetime, that he continued afterward to hold for the term of his own life, being in fact the mere prolongation of the estate already vested in him while the wife was living. All that he had thus acquired he still retained, after her death, and all that she retained until her death descended to her legal heirs.

The statute of descents was so sweeping in its disposition of the decedent's inheritance that it became necessary to insert a section exempting both the husband's curtesy and the wife's dower, two estates which alike began before the death of the persons from whose estate they were derived, from being abrogated. "The estate of a husband as tenant by the curtesy, or of a widow as tenant in dower, shall not be affected by any of the provisions of this chapter." (1 Rev. St., 754, § 20.)

This provision did not create or alter the husband's curtesy or the wife's dower but merely saved them where they had

In the matter of Frances M. Winne.

become previously vested. (See Revisers' notes to the section.) In other words the statute left them where it found them. Before 1848, every scintilla of the wife's interest in her estates of inheritance, as she owned the same at her death, passed to her heirs by virtue of statutory provisions, and her personal estate by other statutory provisions passed to her husband. As to her realty, the same statutes still give all her interest subsisting in her at her death to her lawful heirs. Considered from every point of view from which the subject is capable of being examined, it would appear that tenancy by the curtesy has been swept away in all cases, where the acts of 1848 and 1849 operate upon the wife's property. Those acts leave the whole quantity of interest in her real estate still in her at the moment of her death, in case of intestacy; at that moment the statute of descents, now as heretofore, takes it as she thus leaves it, and vests her entire interest in her heirs-at-law. At that moment the husband has nothing, and at that moment he never, by the common law or by the statutes of this State, acquired any new estate not vested in him at a prior period. It can only be by the mere invention of a new species of estate, never before known, that the husband can now be allowed to deprive the wife's heirs of their lawful inheritance, and appropriate it to himself, or rather, as would oftener happen, to sacrifice it to the demands of his creditors. There is not much in the origin or characteristics of this species of estate which should induce the courts to struggle for its preservation.

The statutes which affect the question of its continuance ought to be interpreted somewhat in the spirit of the age which has demanded many like improvements in our laws concerning the condition of the wife and her rights of property.

Advancing civilization has rejected many cumbrous institutions of the past as useless. Where are now those ancient tenures of homage, fealty, escuage, knightservice, frankalmoign, grand-serjeantry, petit-serjeantry, burgage, villenage, and by the verge? Buried and forgotten, or only remembered as we remember there was a deluge. The feudal

tenures are abolished. The time has come when this other effete relic of the feudal age, "the tenancy by the curtesy of England" is summoned to the dusty receptacle of its kindred. The abolition of this most anomalous and peculiar of those tenures, "whereby lands and tenements be holden," would serve as an additional land mark to indicate a true and substantial progress.

If tenancy by the curtesy *initiate* is destroyed, which is a proposition too plain to be controverted, how can curtesy now have any origin? Certainly, it is not within the province of the courts to manufacture new estates; that would be an act of pure legislation.

Tenancy *initiate*, and tenancy *consummate*, is one and the same estate. They cannot be separated so that one man can be vested with the husband's interest as tenant by the curtesy *initiate*, and another man with the husband's interest as tenant by the curtesy *consummate*.

Take the case of a conveyance by the husband himself, of his right by the 'curtesy *initiate* to a purchaser of that interest while the wife is living, or the case of a judicial sale of the same interest by a judgment creditor upon execution; afterward the wife dies; will it be pretended that the husband in such a case, gets by her death a particle of interest in her estate? That such purchaser owns the husband's estate as tenant by the curtesy *initiate*, and that the husband himself owns another interest as tenant by the curtesy *consummate*? If curtesy *initiate* and curtesy *consummate* are different estates, they may be vested in different owners, but their possible separation strikes the legal mind as an absurdity.

The first section of the act of 1848, is in terms prospective in its operation. The second section, in terms, applies to the property of any female already married when the act was passed. Both sections alike purported to exclude the rights of the husband. It was held in *Westervelt* v. *Gregg*, that the second section was unconstitutional, because it attempted to take away the already vested interest of the husband. But

In the matter of Frances M. Winne.

the effect of the language of the second section, aside from the constitutional difficulty, is precisely the same as to abrogating the husband's vested estate, as is the language of the first section in abrogating the husband's interest in future cases. In the case before cited, the Court of Appeals declared that the second section, if valid, excluded the husband's interest after the wife's death. "Had it, therefore, been competent," say the court, "for the legislature to enact a law thus affecting existing rights of property, the plaintiff would thereby certainly have been divested of any interest in the personal property of his wife; and the right of reducing her choses in action into possession, or assigning or disposing of them for his own use, *or of enjoying them in the event of her death*, would have been taken away." (24 N. Y. R., 375.) And, further, the court add: "In the event of the wife's death, the husband does not take the choses in action not then reduced to his possession as next of kin, or under any statute of distributions; *but the property is already vested in him*, insomuch, that should he die before recovering them, they would be assets of his estate, to be recovered by his representatives, and not by the representatives of his wife" (p. 377).

If, then, the second section of the act of 1848 is so comprehensive that it would, if valid, take away from the husband his right of enjoying the wife's choses in action and personal property, in the event of her death, then, manifestly, the first section, being valid, does operate to that extent. This would prevent the husband from ever enjoying the deceased wife's personal property, as well after as before her decease, and such unquestionably would be the effect of that statute standing by itself.

But the provisions of the Revised Statutes protecting the husband's right to such personalty were left unrepealed in 1848-9, and they alone saved his interest. Now these are also repealed by the law of 1867, and the husband comes in under the present law merely to share in the wife's personal estate after her death, as the widow shares in the personal estate of her deceased husband.

I concur in the opinion expressed in *Hurd* v. *Cass*, that the acts of 1848–9, *did not* affect the laws of descent that governed the wife's real estate; but I dispute the proposition that the husband's curtesy was ever taken by descent. By the statute of descents as well before as after 1848, all the wife's interest descended to her heirs. Prior to 1848 that interest was liable to be abridged or diminished in her realty by the birth of issue, which had precisely the same effect as though she had granted to another person a lease for the term of the lessee's life; so that, dying, she had so much less of interest to descend to her heirs. Now she retains her whole interest till her death, notwithstanding her marriage and the birth of children. She now leaves a larger interest, but such interest as she has, more or less, in real property, goes to her heirs-at-law as it did before.

I must therefore, hold in this matter that the infant petitioner, Frances M. Winne, is sole owner of all the real estate proposed to be sold, and that her father has no interest in it. The proceeds of the sale must be paid or secured for the petitioner's benefit and an order entered accordingly.