STEWART BROWN and JAMES M. BROWN, Trustees, etc., of SAMUEL NICHOLSON, Deceased, Respondents, v. ELLEN NICHOLSON and others, Appellants.

*Will — vested remainder.*

A testator bequeathed certain money to his two sisters, and upon the death of the survivor directed the same to be " distributed to or among such of the children of my deceased brother William, or their (said children's) representatives, as the survivor of my said sisters shall, by will or writing in the nature thereof, direct, and in default of such writing, then that such money be distributed among such children or their representatives *per stirpes* and not *per capita*, equally, share and share alike." *Held*, that the fund did not vest in the ultimate· legatees in remainder until the decease of the testator's surviving sister, and that neither the husbands nor the widows of children who died prior to that time, were entitled to participate in the distribution thereof. (Brady, J., dissenting.)

Appeal from a judgment entered upon the report of a referee.

This action was brought to obtain a construction of the will of Samuel Nicholson, deceased, and to have the accounts of the plaintiffs, as trustees thereunder, passed, and the funds in their hands distributed among the persons entitled to receive the same.

The plaintiffs' testator, Samuel Nicholson, a citizen of the United States, died in the city of New York on the 29th of April, 1857, leaving a last will and testament, which was duly proved and admitted to probate, and of which the plaintiffs were appointed executors.

By his will he directed his executors to pay over the sum of $50,000 to each of his two sisters.

" But on the death of one of my sisters, should they both survive

me, or on my death, should but one of them survive me, it is my will that my surviving sister take the sum bequeathed to the other of my sisters, and that on the death of such survivor, or on my death, should I survive them both, that the moneys so bequeathed my said sisters be distributed to or among such of the children of my deceased brother William or their (said children) representatives as the survivor of my said sisters shall, by will or writing in the nature thereof, direct, and in default of such writing then that such moneys be distributed among such children or their representatives *per stirpes* and not *per capita*, equally, share and share alike ; that is to say, I design the sum of one hundred thousand dollars for my said sisters to be divided between them while both are alive, to pass to the survivor on the death of one of them, and to be distributed on the death of such survivor as afore provided among the children of my brother William."

The survivor of the two sisters left a will by which she attempted to exercise the power of appointment given to her, but the referee found that she did not thereby legally and effectually direct or appoint the distribution of the fund to or among the persons therein named. As to the correctness of this conclusion, no question was raised upon this appeal. The only question discussed was whether the children of William, who were living at the time of the testator's death, took a vested remainder, or whether such remainder did not vest until the death of the surviving sister.

*John N. Whiting*, for Ellen Nicholson and others, appellants.

*Foster & Thomson*, for Anna M. Mulligan and others, appellants.

*F. De Peyster Foster*, for Rosanna Nicholson and others, appellants.

*Niles & Bagley*, for James C. Nicholson, appellant.

*S. F. Higgins*, for William S. Wallace, appellant.

*N. Dana Wells*, guardian *ad litem*, for Henry H., Anna R. and Emily C. Nicholson, appellants.

*James P. Lowrey*, for the respondents.

DANIELS, J. :

The learned referee, in substance, held that the testator, Samuel Nicholson, designed that his estate should be distributed on the death of his surviving sister, and for that reason, under a mere power of appointment, she could not prevent such a distribution by the creation of an intervening trust. And that conclusion appears to have been warranted by the terms of the testator's will. By the disposition and division which the referee directed should be made of the fund which constituted the estate, he also held, in substance, that the fund did not become vested in the ultimate legatees in remainder until the decease of the testator's surviving sister. And concerning the accuracy of that conclusion a difference of opinion appears to exist. If the referee is right, then neither the husband nor the wives of the persons who died during the lifetime of the testator's surviving sister have any right to participate in the distribution of the fund. Whether he is or not, must depend upon the time when the title in remainder to the fund became vested. If that occurred on the decease of the testator, Samuel Nicholson, then the referee was necessarily wrong in the distribution directed to be made by his report. But if the title in remainder did not vest, until the decease of the testator's surviving sister, then the conclusion of the referee was right and should not be disturbed.

The testator, in terms, made no present gift of the fund. But he divided it for life between his two sisters, who survived him, while they lived, and gave the whole fund for life to the survivor of them. At the decease of the survivor he directed " that the moneys so bequeathed my said sisters be distributed to or among such of the children of my deceased brother William or their (said children) representatives as the survivor of my said sisters shall by will or writing in the nature thereof direct. And in default of such writing then that such moneys be distributed among such children or their representatives *per stirpes* and not *per capita*, equally, share and share alike. That is to say, I design the sum of $100,000 for my said sisters to be divided between them while both are alive, to pass to the survivor on the death of one of them. And to be distributed on the death of such survivor, as afore provided, among the children of my brother William."

The primary purpose of the testator evidently was, that the fund

should be distributed among such of his brother William's children, and their descendants, as should be appointed to receive it, under the power given to his surviving sister. Until that power was either executed, or there was a failure to execute it, the disposition of the remainder in the fund was contingent and uncertain. It was not given to all the children of William and their descendants unless a selection from among them should be made by virtue of the power. But the design was that the persons nominated by his surviving sister should be the recipients of the fund. And it was only in case she failed to exercise the authority given to her over it that the fund was to be distributed among all the children of William and their descendants. Until the time of that failure it could not be known whether the fund was to be distributed among all, or only a portion of the persons referred to. And either distribution, by the clear import of the terms used, was to be confined to the children, and the representatives or descendants of the deceased children, of William. The persons, in any event, who were entitled to participate in the distribution, must be either children or the representatives of children of the testator's brother William. And that was to be their relation at the time when the distribution was required to be made, which was on the decease of the surviving sister of the testator. They were then to be children, or the representatives of the children of William, and that, as well as the contingency resulting from the power of appointment, excluded those who died before the decease of the testator's surviving sister. That was apparently the intention of the testator. It was quite clearly indicated by the terms used for the purpose of defining and controlling the gift, as they were employed in the will. It was made to take effect at the decease of his surviving sister, and then only to extend to all the children and their descendants, in case she failed to exercise the power of appointment given to her. Futurity was annexed to the substance of the gift, and for that reason it did not and could not vest until it should become known who were the persons to receive the property designed to be given. (*Everitt* v. *Everitt*, 29 N. Y., 39, 75; 2 Redfield on Wills [2d ed.], 10–12.) The case of *Barker* v. *Woods* (1 Sandf. Ch., 129), is not controlling in a controversy of this description, for the reason, that the remainder, after the expira-

tion of the life estates, was not given to other persons within the signification of the rule there mentioned. It was given to no one until the decease of the surviving sister of the testator, and then it was restrained and confined to the persons who should, at that time, be either children or the representatives of deceased children of his brother William. Such of those children were intended to participate in the distribution as the surviving sister should appoint, or if no appointment were made then all were to enjoy the bounty of the testator from whom the selection might be made. That power of selection was limited to the children living when it might be exercised; and the right to participate in the distribution of the fund in no event was to extend beyond them.

The judgment entered upon the referee's report should therefore be affirmed.

Davis, P. J., concurred.

Brady, J. (dissenting, in part only):

All of the questions, save two, so thoroughly discussed on the argument of this appeal, were properly disposed of by the referee in an able and comprehensive opinion, and it is deemed unnecessary to reiterate, in different phrase, what he has so clearly expressed. It may be that his conclusions can be sustained by more numerous authorities than he has cited, as illustrated by the brief of Messrs. Foster and Thomson, and A. J. Vanderpoel, Esqs., submitted on the argument, in support of his views, but that is not material. It is enough that he was right.

The effect of the findings is, that the trust fund is appropriated as the donor designed it should be, and his intention, therefore, which is the guide in the construction of wills, prevails.

He meant that the children of his brother, William Nicholson, and their representatives, should have and enjoy the trust fund upon the death of his sisters, and he did not contemplate, unless some excellent reason existed which justified it, that any distinction should be made between them. He exhibited no preference himself, and there is nothing in the case from which the inference of prejudice can be fairly drawn.

The views of the referee are adopted, therefore, as a careful and

correct exposition and application of the law which governs this case, and this result renders it necessary only to consider the claims of Elizabeth Nicholson, widow of John Nicholson, sixth child of William Nicholson; Eliza Nicholson, widow of Robert George Nicholson, fifth son of William Nicholson; Rosanna Nicholson, widow of Henry K. K. Nicholson, son of Thomas Nicholson, eldest son of William Nicholson; and of William S. Wallace, husband and administrator of Hannah K., the daughter of Thomas Nicholson, all allusion to which seems to be omitted in the opinion of the referee. The questions presented in relation to them are, whether these widows are entitled to a distributive share of the husband's portion, and whether Wallace is entitled to a part of the share of his wife.

The testator, Samuel Nicholson, conferred upon his surviving sister the power of distributing the trust fund among such of the children of his deceased brother William, or their representatives, as she should select, but he declared that, in default of such choice, then such moneys should be distributed among such children, or their representatives, *per stirpes* and not *per capita*, share and share alike. And further, in order that there should be no misapprehension, he said : " That is to say, I design the sum of $100,000 for my said sisters, to be divided between them, while both are alive, to pass to the survivor on the death of one of them, *and to be distributed on the death of such survivor, as aforesaid,* among the children of my brother William."

The intention of the testator was, that the sum set apart for his sisters should ultimately be given to some or all of the children of his brother William, or their representatives, and the right of selection only was given to the surviving sister. In case of the failure to select, the whole was to be distributed among them all, and they all took a vested interest in the subject of the gift, therefore liable only to be divested by the exercise of the power to appoint or select from among them. The surviving sister had not the power to divest the interest, except in the manner provided by the instrument creating the power, and having failed properly to exercise the duty or right given her, the provision of the will applies and is as if it were written thus : " Upon the decease of my surviving sister, I direct the said sum of $100,000, to be distributed among the

children of my brother William, or their representatives." The fund was disposed of absolutely, subject only to the trust which was created for the benefit of the testator's sisters, and the power which ought, perhaps, to be called a trust. This subject is treated fully by Perry, in the chapter devoted to " trusts that arise by construction from powers " (§ 248, *et seq.*), which contains a correct exposition of the law applicable to a case like this. Under the statute of distributions the widow has always been entitled to share in the personal estate of the deceased husband (Eng. Stat., 2 Black. Com., 515 ; 2 R. S., 96, § 75), and the authorities sustain her right to receive her portion of the personal estate belonging to the husband, allotted them under the statute of distributions, according to the facts proved. (*Cotton* v. *Cotton*, 2 Beav., 67 ; *Merchants' Ins. Co.* v. *Hinman,* 34 Barb., 410 ; see *Knickerbacker* v. *Seymour*, 46 id., 198 ; *Luce* v. *Dunham*, 14 S. C. N. Y. [7 Hun], 202.)

For these reasons we think the widows named are entitled to such part of the husbands' share as would have been distributed to them under the statute, had the money been in possession of the husband at the time of his death.

The claim of William S. Wallace seems to be well founded, to a portion of the funds. The right of the husband to administer upon the personal estate of his deceased wife is a positive right, notwithstanding the statutes of 1848 and 1849. (*McCosker* v. *Golden*, 1 Brad., 64 ; *Ransom* v. *Nichols*, 22 N. Y., 110 ; *Barnes* v. *Underwood*, 47 id., 351 ; *Hatfield* v. *Sneden*, 54 id., 287 ; 2 R. S., 75, § 29.) Under the amendment of the Revised Statutes, passed April 25, 1867, chapter 782 (Laws, vol. 2, p. 1926), the provisions respecting the distribution of estates were applied to the personal estates of married women dying leaving descendants then surviving, and the husband of any such deceased married woman became entitled to the distributive share in the personal estate of his wife to which a widow is entitled in the personal estate of her husband by the provisions of that chapter, and no more.

Prior to the amendment, the provisions mentioned were declared inapplicable to the personal estates of married women, but it was also declared that their husbands might demand, recover and enjoy the same, as they were entitled by the rules of the common law. (2 R. S., vol. 2, p. 97, § 79.) The statute of 1867 was regarded as

restrictive, but the Court of Appeals, determined that it did not affect the rights of the husband, except in the case therein specified, namely, of the wife dying *leaving descendants.* (*Barnes* v. *Underwood*, 47 N. Y., 351.)

Mrs. Wallace left no descendants. The decree should be modified by making the necessary changes to meet these claims, but otherwise it is affirmed. The costs of the appeal should be paid out of the fund.

Judgment affirmed.